Tracy Christopher, Justice
In this appeal, an estate's beneficiary seeks reversal of (a) the trial court's ruling that the beneficiary has no claim for forfeiture of opposing counsel's attorneys' fees, (b) the trial court's assumed denial of the beneficiary's challenge to the independent executor's entitlement to use estate funds to pay her attorneys' fees and expenses in this case, (c) the denial of the beneficiary's application to compel distribution of the estate, and (d) the denial of the beneficiary's motion to recuse the trial judge. We agree with the trial court that the beneficiary lacks standing to pursue a fee-forfeiture claim based on alleged deficiencies in opposing counsel's legal advice to the estate's independent executor. We also find no error in the denial of the motion to recuse. We do find error, however, in the trial court's failure to rule on the extent to which the independent executor's legal fees and expenses can be paid from the estate, and on its failure to order distribution of the estate as statutorily required. We accordingly affirm in part, reverse in part, and remand the cause to the trial court.
I. BACKGROUND
Paul Nunu and his sister Nancy Nunu Risk are each beneficiaries of one-third of the estate of their mother, Rose Farha Nunu ("the Estate").[1] Nancy is the independent executor of the Estate, and she previously was represented in that capacity by Paul, who is an attorney. After Paul accused her of wrongdoing, Nancy instead employed attorneys W. Cameron McCulloch and Christopher C. Burt of the law firm of MacIntyre, McCulloch, Stanfield & Young, LLP ("MacIntyre McCulloch").
The probate case originally had been assigned to statutory county Probate Court No. 4 in Harris County. In that court, Paul allegedly accused Nancy's attorney McCulloch of misconduct and moved to recuse the Honorable Christine Butts on the ground that McCulloch's father previously was the presiding judge of Probate Court No. 4.[2] After Judge Butts voluntarily recused herself, the case was transferred to statutory county Probate Court No. 1.
A. Paul's Motion to Recuse the Trial Judge
Paul then moved to recuse the Honorable Loyd Wright, presiding judge of Probate *72 Court No. 1, alleging that Judge Wright is biased in favor of MacIntyre McCulloch. Judge Wright declined to recuse himself, and the judge assigned to hear the motion denied it.
B. Paul's Claims Against Nancy and His First Application to Compel Distribution
Paul alleged that Nancy, in her capacity as independent executor, breached her fiduciary duties to him and committed acts of negligence per se, gross negligence, gross mismanagement, gross misconduct, and actual fraud. He asked the court to enforce a forfeiture provision of his mother's will against Nancy, to remove her as independent executor, and to award him exemplary damages.[3]
Paul also alleged that the Estate's heirs had agreed to the division of the Estate's real property in February 2014, but that Nancy demanded a release as a condition to distribution of the property. Nevertheless, on March 7, 2014, Paul drafted and delivered to Nancy a "Partition Agreement" and partition deeds that did not contain a release. Nancy refused to sign them. In April 2014, she hired MacIntyre McCulloch, and her new counsel drafted a "Settlement Agreement" containing a release. Paul would not sign that proposed agreement. Based on these factual allegations, Paul pleaded for declaratory relief and for Nancy's removal as independent executor on the ground that her insistence on a release as a condition for the distribution of the Estate's assets violated Texas Estates Code section 405.002(b). Paul also alleged that McCulloch and Nancy conspired to obtain an illegal release.
On October 26, 2015, Paul filed an "Application to Compel Distribution," in which he asked the trial court (1) to compel the distribution of all of the Estate's assets "as such estate existed on March 6, 2014"; (2) to order Nancy to "fulfill her prior agreement to partition and exchange the real property" of the Estate; (3) to order Nancy, in her individual capacity, to "pay all costs of delay including proration of ad valorem taxes and written assignment of all insurance policies"; (4) to "compel distribution of one[-]third of [a] note receivable as of March 6, 2014 ($18,777) plus one[-]third of all interest payments from April 2012 to the present ($1,500), plus one[-]third of all attorneys['] fees, and all jewelry and all other income or assets of the estate." In her response, Nancy pointed out that Paul had not asked the trial court to compel the distribution of the Estate's assets pursuant to the terms of Rose Farha Nunu's will. She also stated that the Estate had outstanding debts for legal fees and the fees and expenses of her expert witness, and that the distribution of the Estate's assets before resolution of the claims against her as executrix would be premature. The trial court found that "[a] necessity for administration exists for the Estate," denied Paul's application, and set the case for trial.
On the third day of the jury trial, Paul announced in open court that he was nonsuiting with prejudice all claims to enforce the will's forfeiture provision or to remove Nancy as independent executrix, reserving only his claims to compel distribution and to contest, and to request forfeiture of, the fees charged by Nancy's attorneys.
C. Paul's Application for Attorney-Fee Forfeiture and Second Application to Compel Distribution of Assets
After Paul's nonsuit, he filed his "Application for Attorney Fee Forfeiture and Second Application to Compel Distribution *73 of Assets." In that document, he argued that all fees claimed by or paid to Nancy's attorneys should be forfeit, or that Nancy should be required to pay the fees herself rather than paying them from Estate funds. He also again asked the trial court to compel distribution of the Estate as it existed on the second anniversary of his mother's death and to compel distribution of the Estate in accordance with the unexecuted partition agreement. In her response, Nancy did not mention any of Paul's requests for relief concerning attorneys' fees. As for his second application to compel distribution, Nancy again stated that there was a continued need for administration because the Estate still had outstanding debts in the form of the attorneys' fees owed to MacIntyre McCulloch and the fees and expenses due to her expert witness.
The trial court rendered a final judgment (1) recounting Paul's voluntary nonsuit of his claims against Nancy; (2) stating that the "Application for Attorney Fee Forfeiture" was heard; (3) finding that Paul "has no claims or causes of action for forfeiture against the attorneys representing [Nancy], as Independent Executrix of this Estate"; and (4) denying "the Application for Attorney Fee Forfeiture and any claims or causes of action relating thereto." The final judgment neither authorized Nancy to pay attorneys' fees from the Estate, nor ordered her to reimburse the Estate for attorneys' fees she already had paid with Estate funds. The trial court denied Paul's motion for rehearing or for a new trial, and Paul brought this appeal.
II. NANCY'S THRESHOLD ISSUES
Before reaching the issues Paul has presented for our review, we first must address Nancy's contentions that (a) we lack subject-matter jurisdiction over this appeal because Paul nonsuited his claims with prejudice, and (b) Paul waived the appeal by bringing an insufficient record.
A. This Court's Subject-Matter Jurisdiction
Nancy argues that we lack subject-matter jurisdiction over this appeal because Paul's voluntary nonsuit with prejudice rendered his claims moot. According to Nancy, there is no appealable judgment in this case "because the final judgment is a memorialization of the voluntary non-suit with prejudice that ended all previous controversies and specifically barred any future litigation, so there is no controversy to appeal."
This argument misrepresents the record. The final judgment unambiguously establishes that Paul nonsuited many of his claims but specifically excepted others. This conclusion is further supported by an excerpt of the trial transcript that is attached to, and incorporated in, the final judgment. Together, the excerpt and the final judgment show that when Paul announced that he was nonsuiting his claims with prejudice, the trial court asked, "And would that nonsuit include any and all claims that could have been brought in this case?" Paul replied, "It would except for a rightful inheritance, all claims except maybe to compel distribution." Paul later added, "This is simply ... just about attorney's fees now, and I informed Mr. McCulloch that I wanted him to compromise substantially on his claims and if he does that then this case will be over and gone and done." Thus, the excerpt establishes that Paul reserved his rights (1) to assert claims for his inheritance, (2) to apply for an order compelling distribution, and (3) to contest the fees charged by Nancy's attorneys. To this list, the trial court added that Paul reserved "any right [Paul] might have" to (4) claim forfeiture of attorney's *74 fees charged by Nancy's attorneys.[4] The judgment and its attached excerpt from the trial transcript establish that Paul's nonsuit of his claims against Nancy did not render moot the issues presented in this appeal.
B. Sufficiency of the Record
Nancy next asserts that Paul waived his right to appeal because he did not request a complete transcript of the trial and all pretrial hearings, and in designating the clerk's record, "he included only 13 of the 418 entries on the docket sheet." Citing no supporting authority, Nancy asserts, "Nancy has no burden to request the record. Paul does." Nancy's premise is mistaken.
A party need not request a reporter's record unless it is necessary to the appeal. See TEX. R. APP. P. 34.1. Moreover, an appellant does not waive the appeal by failing to file a reporter's record. The appellate court can decide the appeal based on the briefs and the clerk's record. See TEX. R. APP. P. 37.3(c) ; Samara v. Samara , 52 S.W.3d 455, 457 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). If a reporter's record is necessary to the appeal, and certain other requirements have not been met, then we will presume that the omitted portion of the reporter's record supports the judgment. See TEX. R. APP. P. 34.6 ; Bennett v. Cochran , 96 S.W.3d 227, 228-29 (Tex. 2002) (per curiam).
As for the clerk's record, the Texas Rules of Appellate Procedure no longer place the burden on any party to designate items to be included in the appellate record, but instead permit any party-or the trial court, or the appellate court-to do so.[5] See TEX. R. APP. P. 34.5(a) ("Unless the parties designated the filings in the appellate record by agreement under Rule 34.2, the record must contain copies of [the enumerated items]."); TEX. R. APP. P. 34.5(b) (2) ("[A]ny party may file with the trial court clerk a written designation specifying items to be included in the record."); TEX. R. APP. P. 34.5(c)(1) ("If a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or any party may by letter direct the trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted item."); see also In re K.M.L. , 443 S.W.3d 101, 119 (Tex. 2014) (pointing out that respondent, who knew that the petitioner alleged a lack of notice, failed to request its inclusion in the clerk's record). Thus, for example, we are able to identify the claims that Paul nonsuited because we ordered the clerk's record supplemented to include his live pleading at the time of trial.
Because we have subject-matter jurisdiction over this appeal, and Paul has not waived his right to appeal, we will decide the issues presented on the record before us.
*75 III. PAUL'S ISSUES PRESENTED
In his first issue, Paul argues that the trial court erred in failing to order that the attorneys' fees Nancy incurred in defending against this removal action are disallowed or forfeit.[6] In his second issue, Paul contends that the trial court erred in (a) denying each of his two motions to compel distribution of the Estate's assets, and (b) failing to order distribution in accordance with the alleged partition agreement. He asserts in his third issue that the judge assigned to hear his motion to recuse Judge Wright abused her discretion in denying the motion.
IV. CLAIMS REGARDING NANCY'S ATTORNEYS' FEES
Paul's first issue is directed to the trial court's ruling that he "has no claims or causes of action for forfeiture against the attorneys representing [Nancy]." Nancy's attorneys' fees are at issue because under Texas Estates Code section 404.0037,
[a]n independent executor who defends an action for the independent executor's removal in good faith, whether successful or not, shall be allowed out of the estate the independent executor's necessary expenses and disbursements, including reasonable attorney's fees, in the removal proceedings.
TEX. EST. CODE ANN. § 404.0037(a) (West 2014). Nancy has used Estate funds to pay at least some of the attorneys' fees incurred in her defense in this suit.
Paul challenges the payment of Nancy's attorneys' fees by (a) arguing that McCulloch and Burt were professionally negligent and breached fiduciary duties they owed to Nancy and to the Estate, or perhaps to the Estate's beneficiaries, and that as a result of this misconduct, their fees are forfeit under the Texas Supreme Court's holding in Burrow v. Arce ; (b) seeking declaratory judgment that the fees should be forfeit or disallowed; and (c) arguing that the requirements of section 404.0037 for payment of attorneys' fees from Estate funds have not been met. We address each contention in turn.
A. Forfeiture of Attorneys' Fees as a Remedy for an Attorney's Breach of Fiduciary Duty Under Burrow v. Arce
Paul contends that, by the legal advice McCulloch and his co-counsel Christopher Burt provided to Nancy, the attorneys were professionally negligent and breached fiduciary duties they owed to Nancy and to the Estate or its beneficiaries. Citing Burrow v. Arce , 997 S.W.2d 229 (Tex. 1999), Paul maintains that as a result of these alleged deficiencies, he is entitled to pursue claims against McCulloch and Burt for fee forfeiture. Cf. id. at 241 (explaining that a client can pursue the equitable remedy of fee forfeiture for an attorney's "clear and serious violation of duty to a client" (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 (Proposed Final Draft No. 1, 1996) )). This argument fails for at least two reasons.
1. Absence of a Pleading Making the Attorneys Parties to this Action *76 First, a claim for forfeiture of attorneys' fees necessarily is a claim against the attorneys. The record contains no pleading in which Paul made McCulloch and Burt parties to this action.
2. Absence of Standing
Assuming that such a pleading exists and that the parties simply have failed to request its inclusion in the record, Paul lacks standing to assert a fee-forfeiture claim against opposing counsel. The Texas Supreme Court explained in Burrow that the equitable remedy of fee forfeiture is intended "to protect relationships of trust by discouraging agents' disloyalty" or other misconduct. Id. at 238, 240. Fee forfeiture accordingly is a remedy only for the breach of a duty arising from the agency relationship. See ids="11541842" index="6" url="https://cite.case.law/sw2d/997/229/">id. at 242-43. When the agency relationship is that of an attorney and client, "concern for the integrity of attorney-client relationships is at the heart of the fee forfeiture remedy." Id. at 244. The remedy accordingly is available to a client for an attorney's "clear and serious violation of duty to a client." Id. at 241.
Paul, however, has not alleged any facts that would give rise to a relationship of trust between himself and opposing counsel. Paul does not contend that he is, or ever was, McCulloch's or Burt's client, and he has neither alleged nor proved any facts under which McCulloch or Burt owed Paul any duty with respect to the provision of legal advice. Paul therefore has no cause of action against McCulloch and Burt for breach of any duty arising from an attorney-client relationship. See White v. Bayless , 32 S.W.3d 271, 275 (Tex. App.-San Antonio 2000, pet. denied) ("An attorney's duties that arise from the attorney-client relationship are owed only to the client, not to third persons, such as adverse parties."). He instead has attempted to pursue claims against the attorneys based on their attorney-client relationship with Nancy.
Although Paul asserts that Nancy's attorneys owe fiduciary duties to the Estate or its beneficiaries, he cites no authority in support of that assertion. He instead cites authorities stating that (1) an attorney owes fiduciary duties to a client, and (2) an executor owes fiduciary duties to an estate's beneficiaries. Given his reliance on such authorities, Paul appears to assume that these different relationships can be combined so that the Estate beneficiaries stand in the shoes of the attorneys' client, or that the attorneys stand in the shoes of the Estate's executrix. These are separate relationships, however, and the distinction between them cannot be ignored. Cf. Huie v. DeShazo , 922 S.W.2d 920, 922-25 (Tex. 1996) (orig. proceeding) (rejecting the argument that attorneys for trustees or executors can reveal attorney-client communications to the trust's or estate's beneficiaries because the attorney "is also working, in tandem with the fiduciary, for the benefit of the beneficiaries," and instead holding that the attorney-client privilege protects communications between the trustee and the trustee's attorney from disclosure to the trust's beneficiaries (quoting Report of the Special Study Committee on Professional Responsibility-Counselling the Fiduciary , 28 REAL PROP. , PROB. , & TR. J. 823 (1994))).
Although Paul complains of the legal advice that he speculates McCulloch or Burt provided or failed to provide to Nancy, Paul has neither alleged nor proved facts under which he has standing to assert claims for breach of a duty that opposing counsel owed to their client. Cf. McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests , 991 S.W.2d 787, 792 (Tex. 1999) ("The general rule is that persons who are not in privity with the attorney cannot sue the attorney for legal *77 malpractice."); Thompson v. Vinson & Elkins , 859 S.W.2d 617, 621 (Tex. App.-Houston [1st Dist.] 1993, writ denied) ("[T]hird parties have no standing to sue attorneys on causes of action arising out of their representation of others." (quoting Dickey v. Jansen , 731 S.W.2d 581, 582-83 (Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.) )). Paul has alleged no facts that would bring his claim for fee forfeiture within an exception to this general rule.
Given the purpose that fee forfeiture is intended to serve, this equitable remedy does not extend to a litigant who is dissatisfied with the legal advice opposing counsel rendered to the litigant's adversary. We overrule this portion of Paul's first issue.
B. Declaratory Judgment Concerning Forfeiture of Nancy's Attorneys' Fees
Paul additionally states in his first issue that the trial court erred in finding that he "has no claims or causes of action for forfeiture against the attorneys representing [Nancy]." He contends that, as a devisee interested in a decedent's estate, he can pursue declaratory relief concerning fee forfeiture under Texas Civil Practice and Remedies Code sections 37.005(3) and 37.005(4). These parts of the Uniform Declaratory Judgments Act provide as follows:
A person interested as or through an executor or administrator, including an independent executor or administrator, a trustee, guardian, other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the administration of a trust or of the estate of a decedent, an infant, mentally incapacitated person, or insolvent may have a declaration of rights or legal relations in respect to the trust or estate:
....
(3) to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings; or
(4) to determine rights or legal relations of an independent executor or independent administrator regarding fiduciary fees and the settling of accounts.
We address each of these subsections separately.
1. Texas Civil Practice and Remedies Code Section 37.005(3) : Declaratory relief "to determine any question arising in the administration" of an estate
In arguing that section 37.005(3) provides an avenue to a declaration that Nancy's attorneys' fees should be forfeit, Paul relies on the following language from the First Court of Appeals:
The plain language of section 37.005(3) allows a devisee to seek a declaration of rights or legal relations to determine "any question arising in the administration" of an estate. TEX. CIV. PRAC. & REM. CODE ANN. § 37.005(3) (emphasis added). The statutory language of this section does not include any limitations on the types of questions on which an interested party may seek a declaration by the trial court.
In re O'Quinn , 355 S.W.3d 857, 865 (Tex. App.-Houston [1st Dist.] 2011 [mand. denied] ). Although section 37.005(3) does not limit "the types of questions" that a litigant may ask, it does not remove the limitations on the questions that the trial court can answer.
"A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy."
*78 Brooks v. Northglen Ass'n , 141 S.W.3d 158, 163-64 (Tex. 2004). A declaration that McCulloch's and Burt's fees "should be" forfeit will not actually result in fee forfeiture due to a limitation found in another section of the Uniform Declaratory Judgments Act. Section 37.006(a) provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a) (West 2015). McCulloch and Burt are not parties to this action, so they would not be bound by any such declaration. As the trial court correctly stated, Paul "has no claims or causes of action for forfeiture against the attorneys representing [Nancy]." A declaratory judgment that Nancy's attorneys' fees "should be" forfeit would be purely advisory, and as the trial court lacked jurisdiction to render an advisory opinion, it properly declined to do so. Cf. Brooks , 141 S.W.3d at 163-64 (where trial court rendered declaratory judgment that homeowners' association had a right to raise assessments in six subdivisions, the Texas Supreme Court vacated for want of jurisdiction the part of the judgment concerning two subdivisions of which no resident was a party to the action).[7]
2. Texas Civil Practice and Remedies Code Section 37.005(4) : Declaratory relief "to determine rights or legal relations of an independent executor ... regarding fiduciary fees and the settling of accounts"
Paul contends that he could obtain a declaration that Nancy's attorneys' fees should be forfeit because he "sought to determine rights or legal relations of an independent executor regarding fiduciary fees of Respondent [sic] Attorneys."[8] To explain why this section provides no exception that would allow Paul to obtain a declaration that McCulloch's and Burt's attorneys' fees should be forfeit for allegedly breaching their fiduciary duties to Nancy, it is necessary to identify the "fiduciary" to which section 37.005(4) refers.
We can ascertain how "fiduciary" is used in subsection (4) by examining the way in which it is used in the rest of section 37.005. The word "fiduciary" is used three times in section 37.005. The first two times it is used, "fiduciary" refers to the person through whom the plaintiff is interested, such as an executor, administrator, or trustee:
A person interested as or through an executor or administrator, including an independent executor or administrator, a trustee, guardian, other fiduciary , creditor, devisee, legatee, heir, next of kin, or cestui que trust in the administration of a trust or of the estate of a decedent, an infant, mentally incapacitated person, or insolvent may have a declaration of rights or legal relations in respect to the trust or estate:
....
(2) to direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity ;
....
(4) to determine rights or legal relations of an independent executor or independent administrator regarding fiduciary fees and the settling of accounts.
*79 TEX. CIV. PRAC. & REM. CODE ANN. § 37.005 (emphasis added).
The doctrine of ejusdem generis tells us that the first use of "fiduciary" in the statute refers to persons such independent executors, administrators, trustees, and guardians. See Ross v. St. Luke's Episcopal Hosp. , 462 S.W.3d 496, 504 (Tex. 2015) ("Where the more specific items, [a] and [b], are followed by a catchall 'other,' [c], the doctrine of ejusdem generis teaches that the latter must be limited to things like the former."). "Fiduciary" is next used as an adjective to describe the capacity in which the people filling such roles act.
When "fiduciary" is used for the third time, it is in the expression "fiduciary fees." Because "[w]e construe statutes to provide consistent meaning to the same word used throughout a statute," City of Lorena v. BMTP Holdings, L.P. , 409 S.W.3d 634, 643 (Tex. 2013), and "fiduciary" has already been used twice in this statute to refer to a person acting in the capacity as a personal representative of a trust or an estate, that is the apparent sense in which it is used the third time as well.
This is consistent with other authorities. For example, it is said that "[t]he 1999 Legislature added Probate Code §§ 149D, 149E, 149F, and 149G to establish a procedure for the independent executor to obtain a discharge from liability for matters relating to the past administration of the estate that have been fully and fairly disclosed."[9] 17 TEX. PRAC. , PROB. & DECEDENTS' ESTATES § 535. At the same time, and as part of the same Act, subsection (4) was added to Texas Civil Practice and Remedies Code section 37.005 to provide a mechanism for the independent executor or administrator to obtain the findings necessary for such a judicial discharge. See id. ; compare 76th Leg., R.S., ch. 855, § 6, 1999 TEX. GEN. LAWS 3527, 3528-29 (adding sections 149D, 149E, 149F, and 149G to the Probate Code ) with id. § 10, 1999 TEX. GEN. LAWS at 3530 (adding subsection (4) to Texas Civil Practice and Remedies Code section 37.005 ).
The use of "fiduciary fees" to mean the fees of an estate's personal representative is further supported by the Uniform Principal and Income Act. Section 37.005(4) refers both to "fiduciary fees and the settling of accounts," and the Uniform Principal and Income Act applies to the settling of accounts. That Act refers to fiduciary fees as distinct from attorneys' fees:
After a decedent dies, in the case of an estate, or after an income interest in a trust ends, the following rules apply:
(1) A fiduciary of an estate or of a terminating income interest shall determine the amount of net income and net principal receipts received from property specifically given to a beneficiary....
(2) A fiduciary shall determine the remaining net income of a decedent's estate or a terminating income interest under the rules in Subchapters C, D, and E which apply to trustees and by:
....
(B) paying from income or principal, in the fiduciary's discretion, fees of attorneys, accountants, and fiduciaries ; court costs and other expenses of administration....
See TEX. PROP. CODE ANN. § 116.051 (West 2014). This section refers to fees of a fiduciary of an estate or a trust because both *80 are fiduciaries, see Kappus v. Kappus , 284 S.W.3d 831, 838 (Tex. 2009), and both are entitled to compensation, either as set out in the will or the trust document or by statute. See, e.g. , TEX. PROP. CODE ANN. § 114.061 (West 2014) (trustee compensation); TEX. EST. CODE ANN. §§ 352.002, .003 (West 2014) (executor entitled to 5% commission or reasonable compensation).
The Uniform Declaratory Judgments Act and the Uniform Principal and Income Act are the only two Texas statutes that refer to "fiduciary fees" or "fees of ... fiduciaries." Both are uniform acts; both deal with payment to an estate's personal representative; and both use the terms "fiduciary" and "fees" to address the personal representative's pay, whether the representative is an executor or an administrator, and whether the pay is referred to as a "commission," "compensation," or another term used by the testator. The use of "fees of ... fiduciaries" in the Uniform Principal and Income Act as something distinct from attorneys' fees is consistent with the use of "fiduciary fees" in the Uniform Declaratory Judgments Act.
Understood in context, then, section 37.005(4) would allow Paul to obtain a declaratory judgment to determine rights or legal relations of an independent executor regarding the independent executor's fiduciary fees and the settling of accounts. It does not allow him to obtain a declaration that opposing counsel's attorneys' fees should be forfeit.
C. Denial of Recovery Under Estates Code Section 404.0037
By arguing for fee forfeiture, Paul disputed whether Nancy's attorneys' fees should be paid at all, but if the fees must be paid by someone, Paul contends that Nancy is personally liable for them. Paul argues that Nancy should not be permitted to pay her attorneys' fees with Estate funds because (1) she did not plead for such relief, (2) she did not defend against the removal action in good faith, and (3) her attorneys' fees were not reasonable and necessary.
1. Absence of a Pleading Requesting Attorneys' Fees
Paul first asserts that Nancy failed to file a pleading requesting authorization to pay her attorneys' fees with Estate funds. According to Paul, Nancy was required to plead for such relief because a request for authorization to pay attorneys' fees from Estate funds is a compulsory counterclaim under Texas Rule of Civil Procedure 97(a). Rule 97(a) applies to claims "which at the time of filing the pleading the pleader has against any opposing party." TEX. R. CIV. P. 97(a). But, Nancy's opposing party is Paul, and Nancy did not seek recovery of her attorneys' fees from him. Nancy instead sought authorization to pay her attorneys' fees from the Estate, and the Estate is not, and could not be, a party to this action. See Price v. Estate of Anderson , 522 S.W.2d 690, 691 (Tex. 1975) ("[T]he 'estate' of a decedent is not a legal entity and may not properly sue or be sued as such."). A request for permission to pay attorneys' fees from an estate's assets accordingly is not a compulsory counterclaim under Rule 97(a).
A trial court may award attorney's fees if (a) the party pleaded for such relief, (b) a mandatory statute requires an award of attorney's fees, or (c) the issue was tried by consent. See In re Estate of Gaines , 262 S.W.3d 50, 60 (Tex. App.-Houston [14th Dist.] 2008, no pet.). Here, each of these alternatives was satisfied.
First, Nancy responded to Paul's Application for Attorney Fee Forfeiture by filing an amended answer in which she prayed "for reasonable attorney's fees for legal services rendered." Although Nancy *81 did not specify whether she was seeking a fee award from Paul or from the Estate, Paul did not seek clarification by filing special exceptions.
Second, section 404.0037 states that if the independent executor defended a removal action in good faith (discussed infra at Section IV.C.2 of this opinion), then the reasonable and necessary attorneys' fees for the independent executor's defense "shall be allowed out of the estate." TEX. EST. CODE ANN. § 404.037(a) (emphasis added). Because the word "shall" normally imposes a mandatory requirement, and nothing in the statute indicates a different intent, the requirement that an independent executor who defends a removal action in good faith be allowed to pay the executor's reasonable and necessary legal fees from estate funds is mandatory. See Crosstex Energy Servs., L.P. v. Pro Plus, Inc. , 430 S.W.3d 384, 392 (Tex. 2014) (citing TEX. GOV'T CODE § 311.016(2) ); cf. Garcia v. Gomez , 319 S.W.3d 638, 643 (Tex. 2010) (explaining that an award of attorneys' fees is mandatory under a statute stating that the court "shall ... enter an order that ... awards ... reasonable attorney's fees" (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) )).
Finally, Paul himself repeatedly raised the question of whether the Estate should be responsible for the expenses of Nancy's defense in this suit, and the parties vigorously disputed the issue without any objection that the issue had not been raised by the pleadings. Thus, the parties tried the issue by consent. See TEX. R. CIV. P. 67.
For each of these reasons, the question of whether Nancy should be permitted to pay her attorneys' fees with Estate funds was properly before the trial court.
2. Conclusive Evidence of Good Faith
Paul also argues that Nancy cannot be permitted to pay her attorneys' fees from Estate funds because she did not defend this action in good faith. Good faith is an issue on which the independent executor bears the burden of proof. See In re Estate of Anderegg , 360 S.W.3d 677, 681 n.3 (Tex. App.-El Paso 2012, no pet.). "[A]n executor acts in good faith when he or she subjectively believes his or her defense is viable, if that belief is reasonable in light of existing law." Lee v. Lee , 47 S.W.3d 767, 795 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). Good faith is established as a matter of law if reasonable minds could not differ in concluding from the undisputed facts that the person in question acted in good faith. See Medina Cty. Comm'rs' Court v. Integrity Grp., Inc. , 944 S.W.2d 6, 10 (Tex. App.-San Antonio 1996, no writ) ; see also Joe v. Two Thirty Nine Joint Venture , 145 S.W.3d 150, 164-65 (Tex. 2004) (holding that uncontroverted facts established as a matter of law that a litigant acted in good faith); Looper v. Hous. Cmty. Coll. Sys. , No. 14-07-00040-CV, 2007 WL 4200642, *7 (Tex. App.-Houston [14th Dist.] Nov. 29, 2007, pet. denied) (mem. op.) (same).
Because it is an incontrovertible fact that Paul nonsuited his removal action against Nancy with prejudice, whether Nancy defended the action in good faith is a question of law. See Crosstex N. Tex. Pipeline v. Gardiner , 505 S.W.3d 580, 609 (Tex. 2016) (explaining that issues ordinarily presenting a question of fact may be decided by the court as a matter of law if the underlying facts are undisputed). As a matter of law, "a dismissal or nonsuit with prejudice is 'tantamount to a judgment on the merits.' " Epps v. Fowler , 351 S.W.3d 862, 868 (Tex. 2011) (quoting Dean v. Riser , 240 F.3d 505, 509 (5th Cir. 2001) ). Moreover, a party who voluntarily nonsuits his claims generally cannot obtain reversal of the order on appeal. See *82 In re Energy Transfer Fuel, L.P. , 298 S.W.3d 361, 365 (Tex. App.-Tyler 2009, orig. proceeding) ; see also Swain v. Hutson , No. 2-09-038-CV, 2009 WL 3246750, *6 (Tex. App.-Fort Worth Oct. 8, 2009, pet. denied) (mem. op.) ("A party cannot request specific action from a trial court and then later complain on appeal when the court has ruled as requested." (citing In reDep't of Family & Protective Servs. , 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding))). And where, as here, the party seeking the executor's removal voluntarily and unilaterally nonsuits all such claims with prejudice on the third day of a jury trial, reasonable minds could not differ in concluding that the executor's "efforts cause[d] [her] opponents to yield the playing the field." Epps , 351 S.W.3d at 870.[10] Thus, when Paul irreversibly conceded his claim for Nancy's removal, the viability and reasonableness of Nancy's defense were established as a matter of law. Although Paul points out that the trial court made no finding that Nancy resisted her removal in good faith, a finding is unnecessary if a matter is established as a matter of law. See Oilwell Div., U.S. Steel Corp. v. Fryer , 493 S.W.2d 487, 490 (Tex. 1973) ; Allright, Inc. v. Strawder , 679 S.W.2d 81, 83 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).
Paul now attempts to resurrect the same grounds on which he sought Nancy's removal as grounds for challenging Nancy's good faith in defending the action; in essence, he contends that Nancy could not have resisted her removal in good faith because Paul would have prevailed on the merits. Those arguments must fail because his voluntary nonsuit of his removal claims with prejudice constitutes a judgment against him on the merits, and he does not (and cannot) challenge that portion of the judgment on appeal.
3. Amount of Nancy's Reasonable and Necessary Attorneys' Fees to be Paid by the Estate
We have established that the trial court was properly presented with the question of the extent to which Nancy was entitled to pay her attorneys' fees with Estate assets, and that, as a matter of law, Nancy defended the action against her in good faith. Nancy therefore is entitled to use Estate funds to pay her reasonable and necessary attorneys' fees incurred in this removal action. And although Paul challenges the reasonableness and necessity of Nancy's attorneys' fees, our review of this issue now meets an immediate hurdle in two indisputable, but conflicting, facts: (1) there is no finding that any of Nancy's attorneys' fees were reasonable and necessary, but (2) Nancy nevertheless has been paying her attorneys' fees with Estate funds. On one hand, Nancy defended the action in good faith and therefore is entitled under Texas Estate Code section 404.0037 to pay her reasonable and necessary attorneys' fees from Estate funds, but the final judgment contains no such authorization. On the other hand, Nancy admitted in her final accounting that she already had paid from Estate funds some of the attorneys' fees incurred in resisting her removal,[11] and although Paul argued in *83 the trial court that these payments were improper under section 404.0037 and "should be repaid to the heirs,"[12] the trial court did not rule on that part of Paul's application.
In sum, the trial court's final judgment neither authorized Nancy to pay any of her legal fees from Estate funds nor ordered her to repay any of the Estate funds she expended on legal fees without authorization.
We cannot reconcile these contradictory positions by concluding that the legal fees Nancy already paid from Estate funds were paid pursuant to an authorization issued by the trial court while the removal action was pending. There is no such order in the record, and the trial court could not properly have approved payments made before the removal action had been decided. See Klein v. Klein , 641 S.W.2d 387, 387 (Tex. App.-Dallas 1982, no writ) (dismissing an executor's claims for attorneys' fees and expenses as premature because the removal action was still pending). Indeed, even though Nancy had paid some of her trial attorneys' fees with Estate funds by June 22, 2015, she correctly pointed out to the trial court four months later that the question of whether she defended the action in good faith could not be determined "ahead of any trial on the merits." Nancy admitted that she had been paying her attorneys with Estate funds even though it had not yet been established that she was defending the action in good faith. As Nancy stated in her response to Paul's first motion to compel distribution of Estate assets,
Applicant has requested ... that the Court order Executrix to return to the Estate ... funds paid to the law firm of [MacIntyre McCulloch] in conjunction with Executrix's defense.... Applicant asserts that Executrix has acted in bad faith and, pursuant to Section 404.0037 of the Texas Estates Code, such fees should be returned. As this Court is well aware, Texas law provides that the defense of the removal action should be determined by a fact finder through a trial on the merits. At that time , the Executrix's fees [sic][13] may come under scrutiny and the fact finder will have the opportunity to determine whether Executrix defended herself in good faith.[14]
Although Nancy appears to have assumed that she could pay her legal fees without first obtaining findings that the fees were both necessary and reasonable, the statute does not authorize such a procedure. See *84 TEX. EST. CODE ANN. § 404.0037(a) ; see also Bocquet v. Herring , 972 S.W.2d 19, 21 (Tex. 1998) (holding that the reasonableness and necessity of an attorney's fees generally is a question of fact); Arthur Andersen & Co. v. Perry Equip. Corp. , 945 S.W.2d 812, 818 (Tex. 1997) (sub. op.) (listing matters a factfinder should consider when determining the reasonableness of attorneys' fees).
Despite Paul's challenge to the reasonableness and necessity of Nancy's attorneys' fees, the trial court instead addressed only whether Paul properly asserted a claim under which the attorneys themselves could be required to forfeit their fees, but failed to determine the amount of Nancy's necessary expenses, including reasonable attorneys' fees, to be paid from the Estate under section 404.0037.[15] This is reflected in the language of the final judgment, in which the trial court found "that [Paul] has no claims or causes of action for forfeiture against the attorneys representing [Nancy], as Independent Executrix of this Estate,"[16] but did not address the extent to which Nancy's attorneys' fees could be paid from Estate funds under section 404.0037. The trial court also stated that "[a]ll relief not expressly granted herein is hereby DENIED," but the trial court could not properly deny in toto both Nancy's right to pay her attorneys' fees with Estate funds and Paul's claim that Nancy reimburse the Estate for attorneys' fees she already had paid.
We accordingly sustain Paul's first issue in part, and we remand to the trial court the determination of the amount to be paid from the Estate for Nancy's "necessary expenses and disbursements, including reasonable attorney's fees, in the removal proceedings." See TEX. EST. CODE ANN. § 404.0037(a). In doing so, we do not reopen the case for relitigation of issues encompassed within Paul's voluntary nonsuit with prejudice of his claims against Nancy;[17] to the contrary, our holding that Paul cannot challenge Nancy's good faith based on the same allegations on which he sought her removal applies equally to the issue of attorneys' fees. For example, Paul sought Nancy's removal on the ground that she violated Texas Estates Code section 405.002(b). Because Paul nonsuited that claim with prejudice, his contention that Nancy violated section 405.002(b) cannot be relitigated, and thus, he cannot be heard to argue that Nancy's attorneys' fees were unreasonable or unnecessary because the fees were incurred for legal services in connection with Nancy's alleged violation of section 405.002(b). As a further example, Paul argued in the trial court that Nancy's attorneys' fees were unnecessary or reasonable because Nancy would not have needed to hire an attorney if she had not diverted Estate assets and breached her fiduciary duties to the Estate and its beneficiaries. Because Paul's claims that Nancy diverted Estate assets and breached her fiduciary duties have been voluntarily nonsuited with prejudice, they cannot be resurrected as grounds for contesting the necessity and reasonableness of her attorneys' fees. Paul remains free to contest the reasonableness and necessity of Nancy's attorneys' fees on grounds not *85 raised in his nonsuited claims against Nancy. See, e.g. , Arthur Andersen & Co. , 945 S.W.2d at 818.
V. APPLICATION TO COMPEL DISTRIBUTION OF THE ESTATE
Under the law applicable to this case, a person interested in an estate may petition the court for an accounting and distribution any time after the expiration of two years from the date the court clerk first issued letters testamentary or letters of administration to any personal representative of the estate.[18]
On receipt of the accounting and, after notice to the independent executor and a hearing, unless the court finds a continued necessity for administration of the estate, the court shall order its distribution by the independent executor to the persons entitled to the property. If the court finds there is a continued necessity for administration of the estate, the court shall order the distribution of any portion of the estate that the court finds should not be subject to further administration by the independent executor. If any portion of the estate that is ordered to be distributed is incapable of distribution without prior partition or sale, the court shall order partition and distribution, or sale, in the manner provided for the partition and distribution of property incapable of division in estates administered under the direction of the county court.[19]
Paul challenges the trial court's denial of both his first and second applications to compel distribution of the Estate. We review a trial court's determination regarding the necessity for administration for abuse of discretion. See Eastland v. Eastland , 273 S.W.3d 815, 820 (Tex. App.-Houston [14th Dist.] 2008, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. See Downer v. Aquamarine Operators, Inc. , 701 S.W.2d 238, 241-42 (Tex 1985). We will not conclude that a trial court abused its discretion merely because, in similar circumstances, we would have decided the matter differently. See id. at 242.
A. Paul's First Application to Compel Distribution
Paul filed his first application to compel distribution of the Estate's assets before the trial of his claims to remove Nancy as independent executor and to enforce a forfeiture provision of his mother's will. The trial court found that a "necessity for administration exists for the Estate of Rose Farha Nunu"; denied the motion to compel distribution; and set the case for trial. Paul challenges the denial of his first application to compel distribution on two grounds.
First, Paul states that "[t]he Probate Court did not find the 'magic word' as required by the statute that a 'continued' necessity for administration exists."[20] We do not believe a "magic word" was necessary. Inasmuch as the administration of the Estate began in 2012, the trial court's finding in 2015 that "[a] necessity for administration exists" necessarily implies a continued necessity. Cf. TEX. R. CIV. P. 299 ("[W]hen one or more elements [of a claim or defense] have been found by the trial court, omitted unrequested elements, when *86 supported by evidence, will be supplied by presumption in support of the judgment.").
Second, Paul argues that the trial court failed to "order the distribution of any portion of the estate that the court finds should not be subject to further administration by the independent executor."[21] Under the statute's unambiguous language, a trial court's duty to order the distribution of a portion of an estate is contingent on a finding that some portion of the estate should not be subject to further administration by the independent executor. The trial court made no such finding here, nor was it required to do so. Until Paul's claims against Nancy were resolved, it could not be determined whether the Estate was to be distributed among three beneficiaries or only two. The parties also could not know the extent to which the trial court would authorize payment of Nancy's attorneys' fees from the Estate. In addition, Paul's claim to enforce an alleged partition agreement was still pending at that time.
Given these circumstances, we cannot conclude that the trial court abused its discretion in denying Paul's first application to compel distribution. We overrule this portion of Paul's second issue.
B. Paul's Second Application to Compel Distribution
After voluntarily nonsuiting his claims against Nancy with prejudice, Paul filed a second application to compel distribution. In its final judgment, the trial court did not mention the second application and did not address the question of whether there was a continued necessity for administration of the Estate. The trial court only recited that Paul nonsuited his claims to enforce the forfeiture provision of Rose Farha Nunu's will; noted that Paul reserved the right to contest or claim forfeiture of Nancy's attorneys' fees; incorporated a portion of the trial transcript in which the nonsuit of some claims and the reservation of other claims were discussed; and declared that Paul had no claims against Nancy's attorneys for fee forfeiture. In her response brief in this court, Nancy avoids using the statutory language that "the court finds there is a continued necessity for administration of the estate," and instead asserts that the trial court "determined" that the Estate is "subject" to "further" administration. This statement finds no support in the record. In its final judgment, the trial court included no reference to the administration of the Estate and never mentioned that Paul had filed a second application to compel distribution of the Estate.
Moreover, the evidence would not support a finding that there is a continued necessity for administration of the Estate. More than six months before Paul filed his Second Application to Compel Distribution of Assets, Nancy filed her First Amended Accounting, in which she stated, "At this time, distribution of the Estate could be completed but for the litigation filed by Paul E. Nunu. Until such time as the litigation has been resolved or settled, a necessity for administration still exists." To resolve the litigation after Paul nonsuited his claims against Nancy, the trial court had only to determine and specify in the final judgment the amount of Nancy's necessary expenditures, including reasonable attorneys' fees, and to order the distribution of the Estate's assets. Because the trial court did not, and could not, find a continued necessity for administration of *87 the Estate, the trial court was required to "order its distribution by the independent executor to the persons entitled to the property."
We therefore sustain Paul's second issue in part, reverse this portion of the judgment, and remand the cause to the trial court (1) to determine the amount of Nancy's reasonable and necessary attorneys' fees and expenses to be paid from the Estate; (2) to authorize Nancy to pay that amount from Estate funds (and, if necessary, to order her to reimburse the Estate for excess legal fees and expenses already paid without authorization); and (3) to order distribution of the Estate.
But, Paul is not entitled to all of the relief he seeks. Paul asked the trial court to compel distribution of the Estate's assets "as such estate existed on March 6, 2014"-that is, two years after Rose Farha Nunu's death-and in accordance with the partition agreement he drafted, but which Nancy never signed. As for the first request, the statute authorizes the trial court to order distribution of the Estate, not distribution of the Estate as it existed at an arbitrary date in the past. As for Paul's request for distribution of the Estate in accordance with the partition agreement he drafted, it is undisputed that Nancy refused to sign the partition agreement. Although Paul is entitled to distribution of the Estate's assets, he is not entitled to specify how the assets are to be divided.
The statute instead provides that "[i]f any portion of the estate ... is incapable of distribution without prior partition or sale, the court shall order partition and distribution, or sale, in the manner provided for the partition and distribution of property incapable of division in estates administered under the direction of the county court."[22] Thus, the trial court must order distribution of the Estate in accordance with the decedent's will, and if any portion of the Estate must be partitioned or sold before being distributed, then the trial court must order such partition or sale in the same manner as estates administered under the county court's direction.
VI. MOTION TO RECUSE
In Paul's last issue, he challenges the order of the Honorable Gladys B. Burwell denying his June 2015 motion to recuse the Honorable Loyd Wright. We review the denial of Paul's motion to recuse the presiding judge of a statutory county probate court for abuse of discretion.[23]
A judge must be recused in any proceeding in which "the judge has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b(b)(2). Recusal is appropriate if "a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial." Ex parte Ellis , 275 S.W.3d 109, 116 (Tex. App.-Austin 2008, no pet.) (quoting Kniatt v. State , 239 S.W.3d 910, 915 (Tex. App.-Waco 2007, order) (per curiam)). According to Paul, Judge Wright should have been recused because he has a personal bias in favor of opposing counsel's law firm, MacIntyre McCulloch. As support for this contention, Paul cites the law firm's contributions to Judge Wright's 2010 and 2014 political campaigns, Judge Wright's appointment of MacIntyre McCulloch attorneys to ad litem *88 positions, and Judge Wright's alleged acts and omissions in this case.
A. Political Contributions
In extreme circumstances, political contributions can support a judge's recusal from a case. To illustrate, the United States Supreme Court held in Caperton v. Massey that a litigant was denied due process when a West Virginia appellate court reversed a $50 million verdict by a vote of 3-to-2 after one of the appellate justices in the majority improperly failed to recuse himself. See Caperton v. Massey , 556 U.S. 868, 872, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009). In that case, the justice "received campaign contributions in an extraordinary amount from, and through the efforts of" the individual who was the defendants' chairman, chief executive officer, and president. That person's $3 million contribution to the justice's election campaign was more than the total received from all of the justice's other contributors; three times the amount spent by the justice's own campaign committee; and $1 million more than the total amount spent by both candidates' campaign committees combined. Id. at 873, 129 S.Ct. 2252. As the Court explained, "there is a serious risk of actual bias-based on objective and reasonable perceptions-when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case ... when the case was pending or imminent." Id. at 884, 129 S.Ct. 2252. To determine if contributions to a judge's election campaign had "a significant and disproportionate influence" on the judge's election we focus "on the contribution's relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the election, and the apparent effect such contribution had on the outcome of the election." Id.
In Paul's motion to recuse Judge Wright, he addressed none of these factors. He does not identify the amount contributed to Judge Wright's 2010 or 2014 campaigns by MacIntyre McCulloch, or the total amount spent in the election for presiding judge of Harris County's Probate Court No. 1 in 2010 or 2014. He does not contend that MacIntyre McCulloch's contributions significantly and disproportionately influenced the outcome of either election.
Paul instead asserts that MacIntyre McCulloch was the "number one" contributor to Judge Wright's election campaigns in 2010 and 2014. That a person or entity made the largest contribution to a judge's election campaign is not a sufficient basis for recusal, because every election campaign necessarily has either a largest contribution or no contributions at all. Moreover, no evidence supports Paul's assertion that MacIntyre McCulloch was Judge Wright's largest contributor in any election. He has characterized the law firm this way solely because, on a print-out from Judge Wright's election-campaign website containing a bullet-point list of about 150 entries identifying contributors, the first entry identifies MacIntyre McCulloch as a contributor to Judge Wright's 2010 and 2014 campaigns. Paul offers no information about how the list is organized, or the amount of the firm's contributions in 2010 and 2014, or the total amount of contributions to Judge Wright's 2010 or 2014 campaigns. In her response, however, Nancy produced evidence that MacIntyre McCulloch contributed $1,000 to Judge Wright's 2010 campaign and $2,500 to his 2014 campaign. No reasonable person could question Judge Wright's impartiality on this basis.
B. Ad Litem Appointments
Paul alleged in his recusal motion that McCulloch had been appointed by Judge *89 Wright eight times to "high paying ad litem appointments." He attached evidence showing that over a four-year period, Judge Wright appointed McCulloch to ad litem positions six times, and twice appointed another of the firm's attorneys, although the other attorney is not involved in this case. Paul cites no authority for the proposition that a judge's ad litem appointments are grounds for recusal, nor do the appointments suggest any bias, or any reason for bias, in favor of the law firm.
C. Alleged Acts and Omissions in the Removal Suit
Paul additionally complains that Judge Wright is biased because the judge denied Paul's motion to compel discovery and for sanctions and denied Paul's motion to disqualify Nancy's attorneys. Paul, however, has neither challenged these rulings on appeal nor even included the motions in the record. We therefore presume that the trial court denied the motions because Paul failed to establish his entitlement to the relief he sought.
Paul also argues for the first time on appeal that Judge Burwell erred in denying his motion to recuse because Judge Wright (1) failed to remove Nancy sua sponte as independent executor, (2) denied Paul's application for forfeiture of Nancy's attorneys' fees, (3) refused to enforce the court's "Standards for Court Approval of Attorney Fee Petitions," and (4) denied Paul's motion for new trial. Because these were not among the grounds raised in Paul's motion to recuse Judge Wright, we do not consider them on appeal.
We overrule Paul's third issue.
VII. CONCLUSION
We affirm the portion of the judgment in which the trial court denied Paul's "Application for Attorney Fee Forfeiture and any claims or causes of action relating thereto." We similarly affirm the ruling, merged into the final judgment, denying Paul's motion to recuse Judge Wright, as well as the implicit denial of Paul's application to compel distribution of Estate "as it existed on March 6, 2014" and to compel distribution in accordance with the alleged partition agreement. We also affirm the portion of the judgment in which the trial court failed to find that there is a continued necessity for administration of the Estate by the independent executor.
On the other hand, the undisputed facts establish as a matter of law Nancy's good faith in defending against this removal action, but the trial court failed determine the amount of her reasonable and necessary attorneys' fees to be paid from the Estate, and neither authorized her to pay any legal fees or expenses from the Estate nor required her to reimburse the Estate for such amounts she paid without authorization. The trial court also erred in failing to compel distribution of the Estate in accordance with the terms of Rose Farha Nunu's will.
We therefore affirm the judgment in part, reverse it in part, and remand the cause to the trial court with instructions
a. to determine the amount of Nancy's reasonable and necessary expenses and attorneys' fees to be paid from the Estate;
b. to authorize Nancy to make such payments, and to order her to reimburse the Estate to the extent that any expenses and legal fees incurred in this action and already paid with Estate funds exceeds the amount of reasonable and necessary expenses and fees found by the trial court;
c. to compel distribution of the Estate in accordance with the will of Rose Farha Nunu; and *90 d. if any portion of the Estate is incapable of distribution without prior partition or sale, to order partition and distribution, or sale, in the manner provided for the partition and distribution of property incapable of division in estates administered under the county court's direction.

Their brother Charles Nunu also is a beneficiary, but he is not a party to this action. To avoid confusion, we refer to each sibling using his or her first name.

The sparse record designated by the parties contains none of this material, although Judge Butts's order recusing herself is included as an exhibit to another motion.

Paul did not plead for actual damages.

We presume that the omitted portions of the reporter's record would show that Paul reserved any right he might have to pursue a fee-forfeiture claim. See Tex. R. App. P. 34.6 ; Bennett v. Cochran , 96 S.W.3d 227, 228-29 (Tex. 2002) (per curiam).

The Texas Rules of Appellate Procedure (and before that, the Texas Rules of Civil Procedure) formerly provided that "[t]he burden is on the appellant, or other party seeking review, to see that a sufficient record is presented to show error requiring reversal." Order Promulgating New Rules of Appellate Procedure , 49 Tex. B.J. 556, 572 (1986) (former Tex. R. App. P. 50(d), repealed 1997); Rules of Civil Procedure , 47 Tex. B.J./Civil Procedure Rules 1, 35 (1984) (former Tex. R. Civ. P. 413, repealed 1986). That language was deleted from the Texas Rules of Civil Procedure in 1986 and from the Texas Rules of Appellate Procedure in 1997.

We include as part of Paul's first issue the additional attorneys'-fee arguments that were included in his briefing of his third issue. Although Paul challenges Nancy's use of Estate funds to pay for legal fees she incurred in resisting this removal action, he does not challenge her use of Estate funds to pay legal fees incurred in the administration of the Estate. See Tex. Est. Code Ann. § 402.002 (West 2014) ("Unless this title specifically provides otherwise, any action that a personal representative subject to court supervision may take with or without a court order may be taken by an independent executor without a court order."); Act of May 29, 2011, 82d Leg., R.S., ch. 1338, § 1.22, sec. 145B, 2011 Tex. Gen. Laws 3882, 3894.

We express no opinion about whether Paul would have standing to assert a cause of action against opposing counsel for which such relief would be available.

Italics omitted. Because they are not parties to this action, McCulloch and Burt cannot be considered "respondents."

Sections 149D, 149E, and 149F of the Probate Code now appear as section 405.003 of the Estates Code. Former Probate Code section 149G is now Texas Estates Code section 405.011.

We express no opinion about whether we would reach the same result if the claims had been nonsuited by agreement, such as pursuant to a settlement.

Specifically, Paul asserted that as of June 22, 2015, Nancy had paid attorneys' fees of $26,441.56 from Estate funds. As support for this, Paul relied on Nancy's amended accounting, which shows that as of June 22, 2015, Nancy had paid three businesses a total of $26,209.15 from Estate funds. Amounts paid to two of the businesses are identified as payments for "attorney's fees and expenses." The record does not indicate the connection, if any, between one of the law firms and Nancy's defense of this case. The second law firm is MacIntyre McCulloch, which was paid $22,949.65. Nancy admitted in her amended accounting that at least some of the legal fees paid by the Estate were incurred in the defense of this removal action. Specifically, she prefaced the list of the Estate's expenditures with a statement that "the expenditures disclosed herein were reasonable, necessary, and in the best interest of the Estate" because Nancy had "been required to initiate or respond to the following non-exhaustive list of pleadings filed by [Paul]." The list of documents to which Nancy referred includes Paul's application for Nancy's removal, his motion to recuse Judge Wright, his motion to disqualify MacIntyre McCulloch from representing Nancy, and many other documents filed in this case.

As a beneficiary of the Estate, Paul had standing to sue Nancy to recover Estate property. See Houston v. Ludwick , No. 14-09-00600-CV, 2010 WL 4132215, *4 (Tex. App.-Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.). Although Paul nonsuited some parts of that claim, he reserved the right to argue, and in fact continued to argue, that Nancy used Estate funds to pay attorneys' fees that she should have paid herself, and that she should be required to "reconstitute" the Estate.

Nancy presumably meant "Executrix's attorneys' fees."

Emphasis added.

Paul repeatedly asserts that Nancy's attorneys charged around $85,000 for their services in this case, but he cites no evidence for this figure.

Emphasis added.

Although Paul reserved from the nonsuit the right to seek forfeiture of Nancy's attorneys' fees, the grounds on which Paul sought such relief must be considered to have been decided against him when he nonsuited his claims against Nancy.

See Act of May 29, 2011, 82d Leg., R.S., ch. 1338, § 1.24, sec. 149B(a), 2011 Tex. Gen. Laws 3882, 3897 (amended 2013) (current version at Tex. Est. Code § 405.001(a) ).

See Act of May 29, 1987, 70th Leg., R.S., ch. 565, § 1, 1987 Tex. Gen. Laws 2246, 2246 (amended 2011 and 2013) (current version at Tex. Est. Code § 405.001(b) ).

Bold and underlining omitted.

See Act of May 29, 2011, 82d Leg., R.S., ch. 1338, § 1.24, sec. 149B(a), 2011 Tex. Gen. Laws at 3897.

Act of May 29, 1987, 70th Leg., R.S., ch. 565, § 1, 1987 Tex. Gen. Laws 2246, 2246.

See Act of May 24, 1997, 75th Leg., R.S., ch. 1435, § 2, sec. 25.00255(j), 1997 Tex. Gen. Laws 5506, 5507 (amended 2001, 2007, 2009, and 2015) (current version at Tex. Gov't Code Ann. § 25.00255(a) and Tex. R. Civ. P. 18a(j)(1)(A) ).