**Dismissed in Part; Affirmed in Part; and Opinion filed January 15, 2019.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-18-00109-CV

### PAUL E. NUNU, Appellant

### V.

### NANCY NUNU RISK AND CHARLES L. NUNU, Appellees

**On Appeal from the Probate Court No. 1
Harris County, Texas
Trial Court Cause No. 416781**

## O P I N I O N

Before us for the fourth time is the continuing dispute between siblings concerning the probate of their mother's estate. *See In re Estate of Nunu*, 542 S.W.3d 67 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("*Nunu I*"); *In re Nunu*, No. 14-17-00106-CV, 2017 WL 1181364 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, orig. proceeding [mand. denied]) (per curiam) (mem. op.) ("*Nunu II*"); *In re Estate of Nunu*, No. 14-17-00495-CV, 2018 WL 3151231 (Tex. App.—

Houston [14th Dist.] June 28, 2018, no pet.) (mem. op.) ("*Nunu III*").[1] In this appeal—*Nunu IV*—Paul E. Nunu challenges the trial court's order finding him to be a vexatious litigant, ordering him to obtain a permission from the local administrative judge before filing new litigation against his siblings Nancy Nunu Risk and Charles Nunu, and requiring him to post security of $15,000 to maintain his most recent litigation.

We conclude that Texas Civil Practice and Remedies Code section 11.101(c) authorizes an interlocutory appeal of the part of the trial court's order finding Paul to be a vexatious litigant and requiring him to obtain a prefiling order before instituting new litigation against his siblings. Because the record supports the trial court's ruling, we affirm that part of the judgment. We dismiss the remainder of the appeal for want of jurisdiction.

## I. BACKGROUND

Nancy and Charles moved to have Paul declared a vexatious litigant because he has attempted to relitigate matters that were finally determined in earlier litigation against Nancy and over which he now has no reasonable probability of prevailing. We therefore briefly recount the history of the parties' dispute.

### A.    *Nunu I*

In *Nunu I*, Paul alleged in his "Second Amended Application to Enforce Forfeiture Provision of Will and for Removal of Nancy Nunu Risk, Independent Executrix" ("the Second Application") that his sister Nancy, in her capacity as independent executrix of their mother's estate, had committed breach of fiduciary duty, negligence per se, gross negligence, gross mismanagement, gross misconduct,

---

[1] We identify the cases by the date the proceeding was filed rather than the date the opinion issued.

and fraud. *Nunu I*, 542 S.W.3d at 72. He asked the trial court to remove Nancy as independent executrix of their mother's estate, compel distribution of the estate, award him exemplary damages, declare Nancy's inheritance forfeit, declare Nancy's attorneys' fees forfeit, and enforce an alleged partition agreement. *See id.* at 72–73.

On the third day of the jury trial, Paul nonsuited with prejudice his claims to remove Nancy or to enforce the forfeiture in his mother's will, reserving only his claims to compel distribution of the estate and to contest and seek forfeiture of Nancy's attorneys' fees. *Id.* at 72. The trial court failed to find a continued need for an administration and denied Paul's claims for forfeiture of Nancy's attorneys' fees but did not determine the amount of Nancy's attorneys' fees that were required to be paid from the estate. We remanded the case to the trial court with instructions (1) to determine the amount of Nancy's reasonable and necessary expenses and attorneys' fees incurred in that action to be paid from the estate's assets; (2) to authorize Nancy to make such payments from the estate's assets and to order her to reimburse the estate to the extent that her expenses and legal fees incurred in that action and already paid with estate funds exceeds the amount of reasonable and necessary expenses and fees found by the trial court; (3) to compel distribution of the estate in accordance with the will of Rose Farha Nunu; and (4) if any portion of the estate is incapable of distribution without prior partition or sale, to order partition and distribution, or sale, in the manner provided for the partition and distribution of property incapable of division in estates administered under the county court's direction.[2] *Id.* at 89–90. We further pointed out that the trial court is not required to compel distribution of the estate's assets in accordance with the terms of any partition or settlement

---

[2] *See* Act of May 29, 1987, 70th Leg., R.S., ch. 565, § 1, 1987 TEX. GEN. LAWS 2246, 2246 (amended 2011 and 2013) (current version at TEX. EST. CODE § 405.001(b)).

3

agreement that had not been signed by all of the estate's beneficiaries. *See id.* at 87. The Supreme Court of Texas denied Paul's petition for review.

## B.     *Nunu II*

While *Nunu I* was pending, Nancy applied to the trial court to resign as independent executrix on the condition that she or a qualified third party be appointed as dependent administrator of the estate. Paul urged the trial court to accept Nancy's resignation but objected to the appointment of a dependent administrator. He additionally argued that Nancy was required to file a verified accounting but had failed to do so. The trial court accepted Nancy's conditional resignation and appointed third party Howard M. Reiner as dependent administrator.

Paul filed a second round of objections, repeating the demand for a verified accounting and adding a request to be appointed as successor independent executor. The trial court overruled Paul's objections and denied his request.

Paul then petitioned this court for a writ of mandamus concerning the overruling of his first round of objections. *See Nunu II*, 2017 WL 1181364, at *1. We denied mandamus relief, as did the Supreme Court of Texas.

## C.     *Nunu III*

While *Nunu I* and *Nunu II* were pending, Paul filed a third round of objections to Reiner's appointment and to Nancy's failure to file a verified accounting that Paul continued to argue was statutorily required. When the trial court overruled Paul's third round of objections, Paul filed *Nunu III*, in which he attempted to appeal the overruling of all three rounds of objections to the trial court's (1) acceptance of Nancy's resignation, (2) appointment of Reiner as dependent administrator, (3) refusal to order a verified accounting, and (d) denial of Paul's request to be appointed successor independent executor.

4

We dismissed the appeal for want of jurisdiction. *Nunu III*, 2018 WL 3151231, at *1. We explained that Paul's attempt to appeal the overruling of his first round of objections was untimely, and thus, that phase of the proceeding ended with the trial court's order of January 12, 2017, accepting Nancy's resignation, appointing Reiner, and failing to order a verified accounting. *See id.* at *6. We further explained that the rulings on Paul's second and third round of requests and objections were denials of reconsideration as to matters raised in his first round of objections, and that to the extent the second and third round of objections raised new matters, the rulings on them were interlocutory. *See id.* at *7.

**D.** *Nunu IV*

On October 27, 2017—a week before we issued our opinion in *Nunu I* and a few weeks after Paul filed his reply brief in *Nunu III*—Paul filed his "Application to Enforce Forfeiture Provision of Will, and for Fraud and Breach of Contract Damages" ("the Third Application"). In this pleading, Paul sought to enforce the forfeiture provision of his mother's will against both Nancy and his brother Charles. Alleging that Paul was attempting to relitigate matters that had been finally determined and in which he had no reasonable probability of prevailing, Nancy and Charles moved to have Paul declared a vexatious litigant. In their motion, Nancy and Charles asked the trial court to order Paul to (1) post security to maintain the action, and (2) obtain permission from the local administrative judge before filing new pro se litigation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.051 (West 2017) (trial court may order vexatious litigant to post security); *id.* at 11.101(a) (trial court may order vexatious litigant to obtain permission before filing new pro se litigation). The trial court granted the motion, and Paul posted the $15,000 surety bond ordered by the court. He now appeals the trial court's order.

5

## II. Issues Presented

In three issues, Paul argues that the trial court abused its discretion in finding him to be a vexatious litigant, because (1) no evidence was offered or admitted to support the finding, (2) the statutory prerequisites for such a finding were not satisfied, and (3) the trial court did not correctly apply the law of the case as stated in *Nunu 1*. We review the trial court's vexatious-litigant ruling for abuse of discretion. *See Jones v. Markel*, No. 14-14-00216-CV, 2015 WL 3878261, at *2 (Tex. App.—Houston [14th Dist.] June 23, 2015, pet. denied) (mem. op.).

## III. Jurisdiction

An appellate court must determine de novo whether it has jurisdiction over an appeal, even if it must do so sua sponte. *See In re Estate of Gaines*, 262 S.W.3d 50, 62 n.13 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *In re C.M.*, No. 14-03-01098-CV, 2006 WL 461378, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem. op.). Usually, only final judgments are appealable. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam). The trial court's order granting Nancy and Charles's vexatious-litigant motion and requiring him to post security does not dismiss Paul's claims, and the record does not show that the trial court subsequently rendered a final judgment in this matter. The order therefore is interlocutory, and a party may not appeal an interlocutory order unless authorized by statute. *See Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001).

It is well-established that no statute authorizes an interlocutory appeal from an order declaring a person to be a vexatious litigant and requiring the person to post security. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 11.051; *McCann v. Spencer Plantation Invs., Ltd.*, No. 14-18-00613-CV, 2018 WL 5261052, at *1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2018, pet. filed) (per curiam) (mem. op.); *Doughty v.*

6

*BLTREJV3 Dall. LLC*, No. 05-14-00387-CV, 2014 WL 3513378, at *1 (Tex. App.—Dallas July 15, 2014, no pet.) (mem. op.); *Lagaite v. Boland*, No. 07-12-0422-CV, 2012 WL 6213259, at *1 (Tex. App.—Amarillo Dec. 13, 2012, no pet.) (mem. op.); *Kirk v. Lucas*, No. 2-04-295-CV, 2004 WL 2569419 (Tex. App.—Fort Worth No. 12, 2004, no pet.) (per curiam) (mem. op.); *Crain v. Cecil*, No. 10-12-00078-CV, 2012 WL 763146, at *1 (Tex. App.—Waco Mar. 7, 2012, no pet.) (mem. op.). This is true even in the probate context, in which there can be more than one final judgment. *See, e.g.*, *Aguilar v. Morales*, No. 04-16-00382-CV, 2017 WL 4158090, at *5 (Tex. App.—San Antonio Sept. 20, 2017, no pet.) (mem. op.). We accordingly dismiss this part of Paul's appeal.

But Nancy and Charles also moved to have Paul declared a vexatious litigant under another provision. Under Texas Civil Practice and Remedies Code section 11.101(a), a trial court may, after notice and hearing, "enter an order prohibiting a person from filing, pro se, a new litigation in a court to which the order applies under this section without permission of the appropriate local administrative judge." TEX. CIV. PRAC. & REM. CODE § 11.101(a). An order under section 11.101(a) is known as a "prefiling order." By including in their motion a request for a prefiling order, Nancy and Charles sought relief under section 11.101(a).

Unlike an order granted pursuant to section 11.051, there is statutory authorization for an appeal of a prefiling order under section 11.101(a). Section 11.101(c) states, "A litigant may appeal from a prefiling order entered under Subsection (a) designating the person a vexatious litigant."

Although section 11.101(c) does not state whether it authorizes an interlocutory appeal or an appeal only from a final order, courts that have considered the issue have held that the statute authorizes an interlocutory appeal. *See, e.g.*, *Florence v. Rollings*, No. 02-17-00313-CV, 2018 WL 4140458, at *2–3 (Tex.

7

App.—Fort Worth Aug. 30, 2018, no pet.) (mem. op.); *Margetis v. Bayview Loan Servicing, LLC*, 553 S.W.3d 643, 644 (Tex. App.—Waco 2018, no pet.); *Jones v. Carter*, No. 09-16-00081-CV, 2016 WL 2941412, at *1 (Tex. App.—Beaumont May 19, 2016, no pet.) (mem. op.); *Restrepo v. Alliance Riggers & Constructors, Ltd.*, 2015 WL 999950, at *1–2 (Tex. App.—El Paso Mar. 4, 2015, no pet.) (mem. op.); *Comeaux v. Hamilton*, No. 07-13-00170-CV, 2014 WL 1047271, *1 n.1 (Tex. App.—Amarillo Mar. 17, 2014, no pet.) (mem. op.).[3]

We agree that this is the most logical construction of the statute. This reading is supported by section 11.103, which provides that a court clerk may not file a litigation, original proceeding, appeal, or other claim by a vexatious litigant acting pro se, but the court clerk "may file an appeal from a prefiling order entered under Section 11.101 designating a person a vexatious litigant." *See* TEX. CIV. PRAC. & REM. CODE § 11.103(a), (d). It makes sense that a person should be able to immediately appeal a prefiling order that is itself immediately effective and that may apply to any new litigation on any subject, against any defendant, in any court in the state.[4] Further, and as the *Florence* court pointed out, section 11.101 is not the only statute to permit an interlocutory appeal without explicitly stating as much. *See Florence*, 2018 WL 4140458, at *3 n.7. For example, section 171.098 of the Texas Arbitration Act states that a party may appeal an order denying an application to compel arbitration and that "[t]he appeal shall be taken in the manner and to the

---

[3] We stated in *Diaz v. A.M. Stringfellow Unit*, No. 14-15-00253-CV, 2015 WL 1870251, at *1 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, no pet.) (per curiam) (mem. op.), "There is no statutory provision authorizing an appeal of an interlocutory order declaring a person a vexatious litigant, *or of an order prohibiting a person from filing new litigation without permission of the local administrative judge*." (emphasis added). This statement was mere obiter dictum, for only a security order was at issue in *Diaz*, not a prefiling order under section 11.101. We did not purport to construe section 11.101 in *Diaz*.

[4] *See* TEX. CIV. PRAC. & REM. CODE § 11.101(e) (a prefiling order "by a district or statutory county court applies to each court in the state").

same extent as an appeal from an order or judgment in a civil action," but the statute is understood to authorize an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1), (b); *Chambers v. O'Quinn*, 242 S.W.3d 30, 31 (Tex. 2007) (per curiam).

For all of these reasons, we conclude that we have jurisdiction over the portion of the trial court's ruling that constitutes a prefiling order under Texas Civil Practice and Remedies Code § 11.101(a).

## IV. THE VEXATIOUS-LITIGANT FINDING

Before a court may issue a prefiling order, it must find that the plaintiff is a vexatious litigant. Although there are several grounds on which a court may make such a finding, Nancy and Charles relied on Texas Civil Practice and Remedies Code § 11.054(2), which provides as follows:

> A court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that . . .
>
> (2)  after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, pro se, either:
>
>   (A)  the validity of the determination against the same defendant as to whom the litigation was finally determined; or
>
>   (B)  the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined . . . .

TEX. CIV. PRAC. & REM. CODE § 11.054(2).

In his first two issues, Paul contends that these statutory requirements were not satisfied because no evidence supporting a vexatious-litigant finding was offered or admitted. We disagree.

9

Nancy and Charles argued that Paul gave up a number of claims by dismissing the claims with prejudice in *Nunu I*, and they attached to their motion an excerpt of the trial transcript from that proceeding. The excerpt includes Paul's nonsuit with prejudice of all claims that had been brought, or that could have been brought, in that proceeding, except that he reserved his rights (a) to assert claims for his inheritance, (b) to apply for an order compelling distribution, and (c) to contest the fees charged by Nancy's attorneys. *See Nunu I*, 542 S.W.3d at 73–74. Nancy and Charles also attached a copy of the 2016 final judgment, which states that "all claims and causes of action contained in [the Second Application] are dismissed with prejudice."

The Second Application is part of the trial court's record, and as Paul requested, the trial court took judicial notice of all pleadings and orders filed in the case. In his Second Application, Paul pleaded that, in violation of Texas Estates Code section 405.002(b), Nancy conspired with her attorneys to obtain an illegal release as a condition of distributing assets. He alleged that Nancy required Paul to execute releases of his claims against her and Charles, which Paul refused to do. Paul also complained that Nancy refused to distribute the estate's assets in accordance with an unsigned Partition Agreement Paul drafted, and Paul sought to enforce the unsigned agreement. Paul further alleged that Nancy "wrongfully retained survivorship monies she knew belonged to the estate, or cashed in multiple insurance policies payable to the estate and transferred to Executrix individually."

In his Third Application, Paul attempted to resurrect each of these claims. He pleaded that Nancy and Charles continue to require a release in violation of Texas Estates Code section 405.002(b) before distributing property. Paul has no possibility of prevailing on the claim because he previously nonsuited it with prejudice and cannot relitigate it. The nonsuit with prejudice constitutes a judgment on the merits

10

on this issue. *See Nunu I*, 542 S.W.3d at 81 (citing *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011)). The judgment in *Nunu I* therefore established that Nancy did not violate Texas Estates Code section 405.002(b) by refusing to sign and perform the Partition Agreement unless Paul released his claims against her and Charles. Moreover, Paul could not prevail on a claim that Nancy or Charles refuses to distribute estate assets without a release for the additional, independent reason that Nancy and Charles can neither withhold nor distribute estate property, with or without a release, because the estate is administered by a third-party dependent administrator.

Paul also again pleaded in his Third Application for specific performance of the unsigned Partition Agreement or alternatively, for breach-of-contract damages for failure to perform it. This claim, too, is foreclosed by his nonsuit-with-prejudice of his claim to enforce the Partition Agreement. By nonsuiting the claim with prejudice, Paul surrendered the right to maintain a claim for enforcement of the Partition Agreement, and he cannot relitigate that determination.

The same is true of his resurrected claim that Nancy wrongfully retained assets belonging to the estate or that were held for the benefit of its beneficiaries. Paul made the same claims in his Second Application, and because he nonsuited the claims with prejudice on the third day of trial, the judgment is treated as a ruling in Nancy's favor on that claim. This is not changed by Paul's allegation that he later discovered a memorandum by Raymond Risk which purportedly was dictated by Paul's and Nancy's mother and which may characterize certain survivorship accounts held by Nancy and her mother as convenience accounts. Even if Paul was unaware of the memo earlier, he nevertheless alleged in his Second Application that Nancy "wrongfully retained survivorship monies she knew belonged to the estate." Paul then voluntarily surrendered that claim and "any and all claims that could have

11

been brought" in that proceeding, with those few exceptions we have described. The memo might have been useful when litigating the claims asserted in Paul's Second Application in *Nunu I*, but it is not a permissible basis for a new claim that Nancy wrongfully retained survivorship monies or other estate property.

For each of these reasons, Nancy and Charles established that (a) Paul is attempting to relitigate issues that were finally determined by the 2016 judgment disposing of the claims against Nancy, and (b) there is no reasonable possibility that Paul could prevail on the claims, because Paul previously caused the claims to be dismissed with prejudice.

In arguing to the contrary, Paul first asserts that judicial notice is not evidence. He cites no authority so holding. Moreover, this contention is contrary to the provision in the Texas Rules of Evidence that a jury in a civil case must take a judicially noticed fact as conclusively established, and a jury in a criminal case may do so. *See* TEX. R. EVID. 201(f). In this civil case, Paul's Second and Third Applications and the 2016 final judgment were judicially noticed, and their contents are beyond dispute. For the reasons we have explained, this evidence supports the trial court's finding that Paul is a vexatious litigant.

Paul next contends that Nancy and Charles asked the trial court to take judicial notice of its file and that Paul had no opportunity "to cross-examine, refute, supplement, or explain any pleadings" the trial court reviewed. For several reasons, this complaint is waived. First, it was Paul himself, not his siblings, who first asked the trial court "to take judicial notice of the entire Courts' file." Paul never withdrew that request, and he did not object when his siblings later made the same request. He therefore cannot be heard to complain that the trial court did as he asked. *Cf. Swain v. Hutson*, No. 2-09-038-CV, 2009 WL 3246750, at *6 (Tex. App.—Fort Worth Oct. 8, 2009, pet. denied) (mem. op.) ("A party cannot request specific action from a trial

court and then later complain on appeal when the court has ruled as requested." (citing *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding))). As for Paul's assertion that he had no opportunity to address the propriety of the trial court's judicial notice, the Texas Rules of Evidence provide that, "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." TEX. R. EVID. 201(e). After asking the trial court to take judicial notice of its entire file, Paul did not ask to be heard on the propriety of granting his request and did not argue at the hearing on the vexatious-litigant motion that it would be improper for the trial court to take notice of his Second and Third Applications or the 2016 final judgment. Further, he affirmatively stated at the hearing on the vexatious-litigant motion that he had "[n]o objection at all" to the trial court's judicial notice.

Finally, Paul points to the allegation in his Third Application that "[t]his lawsuit is wholly based on the actions of Respondents that occurred after the entry of the Final Judgment of April 14, 2016." That allegation, however, is conclusively negated simply by comparing his Second and Third Applications and the 2016 final judgment. For example, an allegation that Nancy did not perform the Partition Agreement *after* the 2016 final judgment is no different from an allegation that Nancy did not perform the agreement *before* the judgment: he is complaining of the same conduct—failure to perform the Partition Agreement—but because Paul nonsuited the claim with prejudice, it already has been finally determined that Nancy is not required to perform the Partition Agreement. The same is true with the other claims we have discussed. These are not new claims; they are attempts to relitigate matters that were closed by Paul's own design.

We overrule Paul's first and second issues.

13

## V. LAW OF THE CASE

In a third issue, Paul contends that at a hearing on his Third Motion to Compel Distribution, the trial court incorrectly applied the law of the case. The hearing occurred while this appeal has been pending and addresses a matter that we have no jurisdiction to consider in this interlocutory appeal of the trial court's prefiling order. We therefore do not consider the transcript of the hearing on Paul's Third Motion to Compel Distribution or any argument that the trial court misapplied the law of the case in connection with that matter. We dismiss that part of Paul's appeal for want of jurisdiction.

To the extent that Paul asserts that the trial court incorrectly applied the law of the case in declaring him a vexatious litigant, our resolution of Paul's first two issues disposes of that argument. The trial court's vexatious-litigant finding is supported by Paul's repeated attempts to relitigate matters that he voluntarily dismissed with prejudice. As we explained in *Nunu I*, those matters could not be reversed on appeal or reopened on remand. *Nunu I*, 542 S.W.3d at 82, 84. In declaring Paul a vexatious litigant for attempting to relitigate the same matters that have been finally decided against him in litigation against one of the same defendants, the trial court correctly applied the law of the case.

We overrule Paul's third issue.

## VI. CONCLUSION

Finding no error in the portion of the judgment finding Paul E. Nunu to be a vexatious litigant and requiring him to obtain permission of the appropriate local administrative judge before instituting new litigation against Nancy Nunu Risk or Charles Nunu, we affirm that portion of the trial court's judgment. We dismiss for want of jurisdiction Paul's attempted appeal of any other issue, including his

14

attempted appeal of the portion of the trial court's order requiring him to post security to maintain the current action.

/s/    Tracy Christopher
                Justice

Panel consists of Justices Christopher, Jewell, and Hassan.