

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-21-00008-CV
_____

RODNEY HODGE AS ADMINISTRATOR OF THE ESTATE OF
BESSIE JEANNE WORTHY, RODNEY HODGE AS TRUSTEE OF
THE BESSIE JEANNE WORTHY REVOCABLE LIVING TRUST, RODNEY HODGE,
INDIVIDUALLY, AND CHERI TYE, Appellants

V.

JOYCE W. LINDAUER ATTORNEY, PLLC, AND JOYCE LINDAUER, Appellees

On Appeal from the County Court at Law
Ellis County, Texas
Trial Court No. 18-C-3182-20CV1

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

Rodney Hodge as administrator of the Estate of Bessie Jeanne Worthy,[1] Rodney Hodge as trustee of the Bessie Jeanne Worthy Revocable Living Trust (collectively Rodney as Trustee), Rodney Hodge, individually (Rodney), and Cheri Tye (Cheri) (collectively Appellants) sued Joyce W. Lindauer Attorney, PLLC, and Joyce Lindauer (collectively Lindauer) and alleged causes of action against Lindauer for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, aiding and abetting conversion, constructive fraud, fraud, civil conspiracy, and negligence in her legal representation of the Estate and the Trust while Larry Hodge (Larry) was the administrator and trustee of the Estate and the Trust. In this appeal, Appellants assert that the trial court[2] erred by granting Lindauer's traditional and no-evidence motions for summary judgment. Because we find that Appellants had no standing to assert their claims founded on Lindauer's alleged legal malpractice while representing Larry in his capacity as the administrator and trustee of the Estate and the Trust, and because no evidence supported their remaining claims, we affirm the trial court's judgment.

## I.      Background

In 2000, Bessie Jeanne Worthy (Bessie) established the Trust and named Larry and his children, Rodney and Cheri, as beneficiaries upon her death. In 2007, Bessie appointed Larry as

---

[1]The Estate of Bessie Jeanne Worthy will be referred to as "the Estate," and the Bessie Jeanne Worthy Revocable Living Trust will be referred to as "the Trust."

[2]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

her power of attorney, and in 2010, Larry became trustee of the Trust. After Bessie's death, Larry was appointed successor administrator of the Estate in February 2012.

### A. The Breach of Fiduciary Duty Case

In 2013, Rodney and Cheri sued Larry in the County Court at Law No. 1 of Ellis County and alleged that Larry breached his fiduciary duties to Bessie while acting as her power of attorney (the Breach of Duty Case). During the course of that litigation, Larry retained George Mitchell and the Mitchell Law Firm (collectively Mitchell) to assist him, as administrator of the Estate and trustee of the Trust, in the sale of property owned by the Trust and also to defend him in the Breach of Duty Case. On July 28, 2016, a jury in the Breach of Duty Case found that Larry breached his fiduciary duties to Bessie.

In their live petition in this case, Appellants alleged that, on August 7, 2016, Larry filed a motion for withdrawal of funds in the probate court to pay the attorney fees due to Mitchell at that time, including those incurred in unsuccessfully defending him against the Breach of Duty Case. Appellants also alleged that Larry requested that all funds in the Estate bank account be withdrawn and delivered to Mitchell in payment of those fees. Appellants further alleged that the probate court denied Larry's motion to withdraw funds on August 22, 2016.[3] Further, they alleged that, on August 24, 2016, Rodney and Cheri filed a case to remove Larry as trustee of the Trust and filed an application in the probate court to remove Larry as administrator of the Estate.

---

[3]Neither the motion to withdraw funds nor the probate court's order are contained in the summary judgment record.

**B.    Mitchell's Federal Suit Against the Trust and the Estate to Recover the Already Denied Attorney Fees**

Appellants further alleged that, on September 8, 2016, Mitchell filed suit in the United States District Court for the Northern District of Texas, Dallas Division, against the Trust and the Estate seeking a judgment to recover the attorney fees the probate court had already denied (the Federal Suit).[4]  Larry, as administrator and trustee of the Estate—and on referral from Mitchell—retained Lindauer to represent the Trust and the Estate in the Federal Suit.  A few days after Lindauer filed the Trust's and the Estate's answer in the Federal Suit, by and through Larry as trustee and administrator, Lindauer, and Mitchell entered an agreed final judgment awarding Mitchell $78,155.50.  As a result of this agreed final judgment, Mitchell obtained a federal court judgment against the Trust and the Estate for the attorney fees Larry incurred on behalf of the Trust and the Estate in the probate court—including the fees incurred by Larry in unsuccessfully defending the Breach of Duty Case—that the probate court had previously denied.  After obtaining the judgment in the Federal Suit, Mitchell sent a copy of it to the bank holding the Estate's bank account, with instructions to send him a check in the amount of the judgment.  The bank complied with the request.[5]

---

[4]Mitchell initially sued the Trust, which he alleged was a California trust based on the residence of the trustee, Larry.  Mitchell subsequently joined the Estate, which was being probated in Ellis County, as a defendant.

[5]After Rodney became trustee, he reopened the Federal Suit and obtained the judgment of the federal court declaring the agreed final judgment void for lack of subject-matter jurisdiction and ordering all monies paid to Mitchell pursuant to that judgment returned to the trustee.

**C.    Larry's Removal as Trustee and Administrator and Appellants' Suit Against Larry, Mitchell, and Lindauer**

In January 2017, the County Court at Law No. 1 granted Rodney and Cheri's application to remove Larry as trustee of the Trust. In their live petition in this case, Appellants allege that the probate court removed Larry as administrator of the Estate in January 2017 and that, on March 10, 2017, the probate court appointed Rodney as successor trustee of the Trust and successor administrator of the Estate. On March 9, 2018, Appellants filed suit against Larry and Mitchell and alleged causes of action against them for breach of fiduciary duty, conversion, fraud by nondisclosure, legal malpractice, and civil conspiracy. On August 22, 2019, Appellants filed their second amended petition, joined Lindauer as a defendant, and asserted causes of action against Lindauer for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, aiding and abetting conversion, constructive fraud, fraud, civil conspiracy, and negligence in her legal representation of the Estate and the Trust.

**D.    Lindauer's Motions for Summary Judgment**

Lindauer answered, and after time for discovery was completed, filed traditional and no-evidence motions for summary judgment. The summary judgment evidence showed that, although Lindauer and Mitchell shared an office suite, Mitchell had not discussed the Breach of Duty case and only had a brief discussion with her regarding the referral of the Federal Suit. It also showed that Larry did not discuss with Lindauer the specifics of how Mitchell's attorney fees were incurred. And it showed that Larry agreed that the Estate and the Trust owed the

5

attorney fees to Mitchell.[6]  According to the summary judgment evidence, Lindauer knew—based on the complaint filed in the Federal Suit—that the attorney fees were related to legal services provided in a probate matter and a civil matter pending in Ellis County courts when she filed the answer in the Federal Suit.  Finally, the summary judgment evidence showed that, a few days after the answer was filed, an agreed final judgment was entered in the Federal Suit awarding Mitchell $78,155.50, with Mitchell, Lindauer, and Larry, as administrator of the Estate and trustee of the Trust, signifying their agreement.

After Appellants filed their response to the motions, the trial court granted the motion as to all causes of action asserted against Lindauer without stating the basis of its ruling.  The trial court subsequently severed the claims against Lindauer from Appellants' claims against Larry and Mitchell and entered a final take-nothing judgment in favor of Lindauer.

## II.     Rodney as Trustee Lacks Standing to Bring His Claims Based in Legal Malpractice

Neither party has directly questioned whether Rodney as Trustee[7] had standing to bring his claims based in legal malpractice,[8] but we are obligated to determine the issue since "standing is a 'prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case.'"  *Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)).  "In

---

[6]Larry testified that Mitchell's fees were owed by the Trust and that he would not contest the Federal Suit.  Lindauer testified that Larry agreed that the Trust and the Estate owed the attorney fees to Mitchell.

[7]Rodney and Cheri did not assert claims against Lindauer for legal malpractice or breach of fiduciary duty.

[8]Lindauer, however, indirectly raised the issue in her traditional and no-evidence motions for summary judgment relating to legal malpractice by arguing that her client in the Federal Suit was Larry, as administrator of the Estate and trustee of the Trust, that the evidence established that she did not breach a duty to her client, and that there was no evidence that Lindauer had breached her duty to her client.  In their response, Appellants argued that Lindauer was the attorney for the Estate and the Trust in the Federal Suit.

Texas, the standing doctrine requires that there be (1) 'a real controversy between the parties,' that (2) 'will be actually determined by the judicial declaration sought.'" *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (quoting *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993))). "Implicit in these requirements is that litigants are 'properly situated to be entitled to [a] judicial determination.'" *Id.* (quoting 13 Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* § 3531, at 338–39 (1984)). A party may have standing to bring some of the claims asserted in its pleadings, but not others. *See Garcia*, 593 S.W.3d at 206–12 (holding that Garcia did not have standing to bring his prospective claims for relief but addressing his retrospective claims on the merits).

In Texas, "[l]egal malpractice claims sound in tort." *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 783 (Tex. 2006) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). "The plaintiff must demonstrate 'that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred.'" *Id.* (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)).

Texas courts have recognized that "an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent representation of the client." *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996). "Without this 'privity barrier,' the rationale goes, clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability." *Id.* Consequently,

7

Texas courts "have consistently held that third parties [have] no standing to sue attorneys on causes of action arising out of their representation of others." *Dickey v. Jansen*, 731 S.W.2d 581, 582–83 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). This privity barrier has been applied by Texas courts to hold that a beneficiary of an estate or trust has no standing to assert a legal malpractice claim against the attorney drafting the will or trust, *id.* at 583; that an estate beneficiary lacked standing to assert claims based on legal malpractice and breach of fiduciary duties on behalf of the estate against attorneys retained by the executor of the estate, *Estate of Nunu*, 542 S.W.3d 67, 76 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); and that a successor personal representative lacked standing to assert a legal malpractice claim against an attorney retained by the prior personal representative, *Messner v. Boon*, 466 S.W.3d 191, 206 (Tex. App.—Texarkana 2015, pet. granted, judgment vacated w.r.m.).[9]

Since Rodney as Trustee's legal malpractice claims against Lindauer arise solely out of her representation in the Federal Suit, to determine whether he has standing to assert those claims, we must determine the identity of Lindauer's client in that suit. In the traditional and no-evidence motions for summary judgment, Lindauer argued that her client in the Federal Suit was Larry, as administrator of the Estate and trustee of the Trust. Appellants alleged in their petition that Lindauer had an attorney-client relationship with Larry as administrator of the Estate and trustee of the Trust during the Federal Suit and that Lindauer, therefore, was the attorney for the Estate and the Trust and owed them a fiduciary duty.

---

[9]*See also Huie v. DeShazo*, 922 S.W.2d 920, 925 (Tex. 1996) (citing *Thompson v. Vinson & Elkins*, 859 S.W.2d 617 (Tex. App.—Houston [1st Dist.] 1993, writ denied), as authority for the rule that "beneficiary lacked standing to sue trustee's attorney for malpractice, as no attorney-client relationship existed between them").

In their response to the motion for summary judgment and their brief on appeal, Appellants did not cite any authority in support of the proposition that, because an attorney has an attorney-client relationship with a personal representative of an estate or a trustee of a trust, that attorney is consequently the attorney for the estate or trust and owes them a fiduciary duty.[10] Rather, they asserted that Lindauer did not dispute that she was the attorney for the Estate and the Trust in the Federal Suit[11] and that Lindauer judicially admitted that she owed a duty of care to the Estate and the Trust in the motion for summary judgment.[12]

However, because standing is a component of subject-matter jurisdiction, it may not be waived by the parties. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). It also cannot be conferred by agreement. *Bitgood v. Harkness*, No. 09-20-00263-CV, 2021 WL 2371252, at *5 (Tex. App.—Beaumont June 10, 2021, pet. filed) (mem. op.); *Green*

---

[10]In their reply brief, in support of their contention that an attorney retained by a personal representative is the attorney for the estate, Appellants cite *Ullrich v. Estate of Anderson* for the proposition that a successor representative steps into the shoes of the prior representative. *Ullrich v. Estate of Anderson*, 740 S.W.2d 481, 484 (Tex. App.—Houston [1st Dist.] 1987, no pet.). However, the issue in *Ullrich* was whether the estate was liable for fees incurred over the course of the administration of the estate for the services of an accountant who had been retained by both the prior personal representatives and the successor personal representative. *Id.* at 482. In that case, the court of appeals held that the estate was liable for the accountant's fees because they were expenses incurred in the administration of the estate, irrespective of whether those expenses were incurred by more than one personal representative. *Id.* at 484−85. In dicta, the court of appeals stated that the successor's personal representative "stands in the shoes of the prior representatives," without citation to any authority in support of this statement. *Id.* at 484.

       Further, in *Messner*, where the issue was whether a successor personal representative could bring suit for legal malpractice against an attorney retained by a prior personal representative, we rejected the appellant's argument that she could bring that claim because she stepped into the shoes of the prior personal representative. *Messner*, 466 S.W.3d at 206. For the reasons stated in that case, we also reject Appellants' argument here.

[11]However, in the testimony that Appellants cite in support of this assertion, Lindauer only acknowledged that the Estate and the Trust were the named defendants in the Federal Suit and did not deny that she was counsel of record for the defendants.

[12]In the motion for summary judgment regarding the legal malpractice claim, Lindauer stated, "It is indisputable that Lindauer acted as attorney for Hodge in his capacity as Trustee and Administrator, so we admit Plaintiffs can establish the existence of a duty." We also note that the summary judgment motion regarding the legal malpractice claim also stated that "Lindauer does not dispute she owed the Estate and Trust a duty of care."

9

*Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Consequently, even if we were to agree with Appellants' characterization of the statements in the motion for summary judgment, the statements do not affect our standing analysis.

In Texas, "[t]he term 'trust' refers not to a separate legal entity but rather to the *fiduciary relationship* governing the trustee with respect to the trust property." *Huie*, 922 S.W.2d at 926. As the court noted, "It is [the trustee] that holds the trust property for the benefit of [the trust beneficiary], and it is [the trustee] that is authorized to hire counsel." *Id.* (citing TEX. PROP. CODE ANN. § 113.018(a)). Consequently, "the trustee who retains an attorney to advise him or her in administering the trust is the real client, not the trust beneficiaries." *Id.* at 925.

Likewise, an estate is not a legal entity that can sue or be sued as such. *Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex. 1987); *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975). The personal representative holds the property of the estate in a fiduciary capacity for the benefit of the beneficiaries of the estate. *See Humane Soc'y of Austin & Travis Cty. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975). The Texas Estates Code requires the personal representative to "recover possession of the estate and hold the estate in trust to be disposed of in accordance with the law." TEX. EST. CODE ANN. § 101.003. Thus, the personal representative is the trustee of the property of the estate. *Humane Society of Austin*, 531 S.W.2d at 577. Further, it is the personal representative of the estate that is authorized to hire counsel and to be reimbursed for his services. *See* TEX. EST. CODE ANN. § 352.051(2) (personal representative entitled to "reasonable attorney's fees necessarily incurred in connection with the proceedings and management of the estate"); *Huff v. Huff*, 124 S.W.2d 327, 328 (Tex. 1939)

10

(noting under a prior statute that, "an independent executor, or an administrator, is authorized to employ an attorney to represent the estate during the course of administration, and to contract to pay him a reasonable fee" (citing *Callaghan v. Grenet's Estate*, 18 S.W. 507 (Tex. 1886))). As a result, it is the executor or administrator of an estate who retains an attorney to advise him or her in administering the estate that is the real client. *See Messner*, 466 S.W.3d at 206 (holding legal malpractice claim against attorney retained by a prior personal representative of an estate belongs to prior personal representative, not successor personal representative);[13] *see also Huie*, 922 S.W.2d at 925.

With those principles in mind, we examine the record to determine whether Rodney as Trustee has standing to assert his claims based in legal malpractice against Lindauer. To determine standing, we examine the petition and "presume the truth of allegations supportive of standing." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 503 (Tex. 2010). "[W]hen a Texas appellate court reviews the standing of a party sua sponte, it must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. "Because standing is a component of subject[-]matter jurisdiction, [it is considered] under the same standard by which we review subject[-]matter jurisdiction generally. That standard requires the pleader to allege facts that

---

[13]As we noted in *Messner*, "The role of an executrix and her attorney should not be blurred. The executrix's duty is to prosecute claims on behalf of the estate; the attorney's duty is to give the executrix candid legal advice." *Messner*, 466 S.W.3d at 206 n.6 (quoting *Lesikar v. Rappeport*, 33 S.W.3d 282, 320 (Tex. App.—Texarkana 2000, pet. denied)). In *Lesikar*, we also noted, "The executrix is liable for breach of fiduciary duties to the beneficiaries; the attorney is liable for breach of fiduciary duties to the executrix." *Lesikar v. Rappeport*, 33 S.W.3d 282, 320 (Tex. App.—Texarkana 2000, pets. denied).

11

affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* (citing *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex. 1967)).

As relevant to this issue, the factual allegations in Appellants' live pleading showed that Rodney and Cheri, individually, brought suit as beneficiaries under the Trust and the Estate and that Rodney as Trustee brought suit as the trustee of the Trust and administrator of the Estate. Appellants alleged that Rodney was appointed successor trustee of the Trust and successor administrator of the Estate on March 10, 2017. They also alleged that Larry was appointed successor administrator of the Estate on February 9, 2012, and that he served in that capacity until his removal on January 30, 2017. Although the live pleading did not allege when Larry was appointed trustee of the Trust, the record showed that he was appointed in 2010, and the live pleading alleged various conduct by Larry as trustee of the Trust in 2015 and 2016 and alleged that he was removed as trustee of the Trust on January 30, 2017.

Appellants also alleged that Mitchell filed the Federal Suit on September 10, 2016, that the Estate and the Trust were represented in that suit by Lindauer, and that Larry told Lindauer not to dispute the fees sought by Mitchell and to work on an agreement to get the fees paid in full. In addition, they alleged that Lindauer had an attorney-client relationship with Larry as administrator of the Estate and trustee of the Trust during the Federal Suit. They also alleged that, on September 16, 2016, an agreed judgment was entered in the Federal Suit that gave Mitchell all the relief he requested, along with an additional $2,000.00 in attorney fees and costs. Appellants also alleged that the final judgment was approved by Mitchell, Lindauer as attorney for the Estate and the Trust, and by Larry as administrator of the Estate and trustee of the Trust.

12

Appellants' allegations showed that Larry was trustee of the Trust and administrator of the Estate at the time of the Federal Suit, that he directed Lindauer in her defense of the Trust and the Estate in that suit, and that Lindauer had an attorney-client relationship with Larry as administrator of the Estate and trustee of the Trust during the Federal Suit. In addition, both Larry and Lindauer testified that Lindauer was retained by Larry as trustee of the Trust and administrator of the Estate to defend the Trust and the Estate in the Federal Suit.

There are no pleadings and no evidence that any of the Appellants retained Lindauer in the Federal Suit, or for any other purpose. Rather, both the pleadings and the evidence show that, at the time of the Federal Suit, Larry was trustee of the Trust and administrator of the Estate and that, in those capacities, Larry retained Lindauer to defend the Trust and the Estate in that suit.

In *Messner*, Wendolyn Messner, as the administratrix of the estate of Delbert M. Messner, brought claims against Boon for legal malpractice and breach of fiduciary duty in his representation of Delbert (during his lifetime), and of Bengel, the executrix of Delbert's estate. *Messner*, 466 S.W.3d at 195. We held that Wendolyn, as administratrix of Delbert's estate, had standing to bring the survivable legal malpractice claims arising from advice Boon gave to Delbert during his lifetime because "[a]n executor is a personal representative who 'stands in the shoes' of the decedent." *Id.* at 205 (alteration in original) (quoting *Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009) (quoting *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 787 (Tex. 2006))).

13

However, regarding the legal malpractice claims based on advice that Boon gave to Bengel when she was executrix of Delbert's estate, we noted that those claims were not based on any injury to Delbert and that the injury, if any, was to Bengel as executrix of his estate. *Id.* at 206. Therefore, any malpractice claim arising from advice Boon gave to Bengel, who was deceased, belonged to Bengel's estate. Consequently, we held that, because of the privity barrier, Wendolyn, as the successor personal representative of Delbert's estate, "did not possess the power to bring claims for legal malpractice" belonging to Bengel, the prior representative of Delbert's estate. *Id.*

Similarly, in this case, any legal malpractice claim relating to Lindauer's representation in the Federal Suit belongs to Larry who, as administrator and trustee, retained Lindauer to defend the Estate and the Trust. As in *Messner*, the privity barrier bars Rodney as Trustee, the successor administrator of the Estate and successor trustee of the Trust, from asserting a claim for legal malpractice against Lindauer related to her representation in the Federal Suit. Therefore, we find that Rodney as Trustee does not have standing to assert the legal malpractice claims against Lindauer. *See id.*

Since the privity barrier bars beneficiaries of an estate or trust from asserting a claim for legal malpractice against an attorney retained by the personal representative of the estate or the trustee of the trust, we find that Rodney and Cheri do not have standing to assert their legal malpractice claims against Lindauer. *See Estate of Nunu*, 542 S.W.3d at 76.

14

### III.    Appellants' Remaining Claims

#### A.    Standard of Review

"We review a trial court's ruling on a motion for summary judgment *de novo*." *Pettigrew v. Gastineau*, No. 10-18-00203-CV, 2020 WL 6066107, at *3 (Tex. App.—Waco Oct. 14, 2020, no pet.) (mem. op.) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).  "When a party moves for both traditional and no-evidence summary judgment on the same ground or issue, we first review the trial court's judgment under the no-evidence standard of review."  *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).  "That is because if the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion."  *Id.* (quoting *Merriman*, 407 S.W.3d at 248).

"We review a no-evidence summary judgment under the same standard as a directed verdict."  *Id.* (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006)).  "Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to each challenged element of its cause of action.  *Id.* (citing *Mack Trucks,* 206 S.W.3d at 582).  "We consider the evidence in the light most favorable to the non-movant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not."  *Id.* (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam); *City of Keller v. Wilson*, 169 S.W.3d 802, 823 (Tex. 2005)).  "When the non-movant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper."  *Id.*

(citing *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997))).

### B.      Breach of Fiduciary Duty and Constructive Fraud

"Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010)). "[C]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). "Constructive fraud may occur where one violates a fiduciary duty." *In re Estate of Kuykendall*, 206 S.W.3d 766, 770 (Tex. App.—Texarkana 2006, no pet.) Rodney as Trustee asserted claims against Lindauer for breach of fiduciary duty and constructive fraud.[14] As to both claims, Lindauer's no-evidence motion for summary judgment asserted that there was no evidence of a breach of a fiduciary duty.

A fiduciary duty may arise out of a formal relationship, such as an attorney-client or trustee relationship, or informally out of "a moral, social, domestic or purely personal relationship of trust and confidence." *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005)

---

[14]The constructive-fraud claim was based on Lindauer's alleged breach of fiduciary duty.

16

(per curiam) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).  In their live petition and in their brief on appeal, Appellants based their claim that Lindauer owed a fiduciary duty to Rodney as Trustee solely on their assertion that Lindauer was the attorney for the Estate and the Trust.  As we have previously discussed, Lindauer was the attorney for Larry as administrator of the Estate and trustee of the Trust, not Rodney as Trustee or of the Estate or the Trust.  As a result, there was no evidence of an attorney-client relationship between Lindauer and Rodney as Trustee, the Estate, or the Trust.  There was also no summary judgment evidence of any other relationship that would give rise to a fiduciary duty.  Consequently, Lindauer did not owe a fiduciary duty to Rodney as Trustee, the Estate, or the Trust.

Where there is no duty there can be no breach of duty.  *State v. Triax Oil & Gas, Inc.*, 966 S.W.2d 123, 128 (Tex. App.—Austin 1998, no pet.); *Jackson v. Associated Developers of Lubbock*, 581 S.W.2d 208, 213 (Tex. App.—Amarillo 1979, writ ref'd n.r.e.); *Robertson v. Sw. Bell Tel. Co.*, 403 S.W.2d 459, 472 (Tex. App.—Tyler 1966, no pet.); *Wilson v. Duever*, 373 S.W.2d 339, 345 (Tex. App.—San Antonio 1963, writ ref'd n.r.e.).  Therefore, we hold that the trial court did not err in granting summary judgment on Rodney as Trustee's claims for breach of fiduciary duty and constructive fraud.

**C.**    **Aiding and Abetting Breach of Fiduciary Duty, Aiding and Abetting Conversion**

In their live pleadings, Rodney and Cheri, as beneficiaries of the Estate and the Trust, alleged that Lindauer aided and abetted Larry in his breaches of fiduciary duty.[15] In their brief on appeal, Rodney and Cheri contend that Lindauer can be held liable if she knowingly participated in the breach of a fiduciary duty, thereby becoming a joint tortfeasor with the fiduciary, citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). Texas recognizes joint tortfeasor liability when a party knowingly participates in a fiduciary's breach of its fiduciary duty. *Id.* However, whether Texas recognizes a cause of action for aiding and abetting is still an open question. *See Parker*, 514 S.W.3d at 224 (noting that Texas Supreme Court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting" (citing *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996))).

Nevertheless, whether we construe the live pleadings as asserting a cause of action for aiding and abetting or for joint tortfeasor liability, both causes of action require that Rodney and Cheri show that Lindauer had knowledge that Larry was breaching his fiduciary duty and either participated in the breach (as a joint tortfeasor) or had the intent to assist Larry's actions (aiding and abetting). *See Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.—Austin 2001, pet. denied) ("A cause of action premised on contribution to a breach of a fiduciary

---

[15]Rodney and Cheri alleged that Lindauer "intentionally and knowingly gave substantial assistance and encouragement to [Larry] in his breaches of his fiduciary duty by"
    (i)     aiding [Larry] in wrongfully and deceptively having the Estate and/or Trust pay his personal legal fees,
    (ii)    wrongfully and deceptively assisting [Larry] in preventing the Estate and Trust from fully and fairly presenting a defense in the Federal Suit, and
    (iii)   intentionally remaining silent about [Larry's] breaches of duty.

duty under *Kinzbach* must involve the knowing participation in such a breach." (citing *Kinzbach*, 160 S.W.2d at 514)); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (aiding and abetting requires "an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions" (quoting *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981)).

The no-evidence motion for summary judgment asserted that there was no evidence that Lindauer knew of any breach of fiduciary duty by Larry. In their brief on appeal on this issue, Rodney and Cheri point only to the fact that Lindauer is an attorney licensed in Texas and to Lindauer's responses to requests for admissions that admitted that she was familiar with the term "fiduciary duty," that she was aware of some types of relationships that give rise to a fiduciary duty, and that she has handled probate cases. However, none of this evidence showed that Lindauer had any knowledge of any alleged breach of fiduciary duty by Larry. Further, we have reviewed the summary judgment evidence, and we have found no evidence that Lindauer knew of any alleged breach of fiduciary duty by Larry. Since Appellants failed to produce more than a scintilla of evidence that Lindauer knew of any alleged breach of fiduciary duty by Larry, we find that the trial court did not err in granting summary judgment on Rodney and Cheri's aiding and abetting breach of fiduciary duty claim.

The Appellants also alleged a cause of action against Lindauer for aiding and abetting Larry and Mitchell in the conversion of the Estate's and the Trust's monies. Even if Texas recognizes the tort of aiding and abetting a conversion of property, Appellants were required to show that Lindauer, with wrongful intent, substantially assisted and encouraged Larry and

19

Mitchell in their conversion of the Estate's and the Trust's property. *See Parker*, 514 S.W.3d at 225. Wrongful, or unlawful, intent means "knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Juhl*, 936 S.W.2d at 644 (quoting *Payton*, 512 F. Supp. at 1035).

Lindauer's no-evidence motion for summary judgment, *inter alia*, asserted that there was no evidence of unlawful intent. In their brief on appeal, Appellants point to Lindauer's testimony that she did not inquire into the jurisdiction of the federal court beyond what was pled in the complaint, the admission as to those jurisdictional allegations in the answer filed in the Federal Suit, Lindauer's testimony that she did not confirm Larry's status as administrator of the Estate and trustee of the Trust, Lindauer's ignorance as to the services actually performed by Mitchell, her failure to investigate the two Ellis County cases referenced in the complaint filed in the Federal Suit, and her failure to challenge the allegations made in that complaint. However, none of this evidence, and no other summary judgment evidence, showed that Lindauer knew of any alleged conversion of the Estate's and the Trust's property by Larry and Mitchell. Consequently, we find that Appellants failed to produce more than a scintilla of evidence of wrongful or unlawful intent. Therefore, we find that the trial court did not err in granting summary judgment on Appellant's aiding and abetting conversion claim.

### D. Fraud

Appellants also asserted a cause of action against Lindauer for fraud. In order to prevail on their fraud claim, Appellants were required to show (1) that Lindauer made a material representation (2) that was false, (3) that Lindauer either knew the representation was false when

20

made or made it recklessly without knowledge of its truth, (4) that she intended the complaining party to act upon the representation, (5) that the complaining party relied and acted upon it, and (6) that the complaining party suffered injury. *Newman v. Siviam*, No. 10-19-00192-CV, 2020 WL 103756, at *3 (Tex. App.—Waco Jan. 8, 2020, no pet.) (mem. op.) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). Lindauer's no-evidence motion for summary judgment asserted that there was no evidence of the first five elements.

In their response to the summary judgment motion the Appellants contended, and in their brief on appeal they contend, that, by defending the Estate and the Trust in the Federal Suit, Lindauer represented that she would act with inveterate honesty and loyalty, always keeping the best interest of the Estate and the Trust in mind. Appellants do not cite any authority for the proposition that an attorney merely by representing a party makes a *representation* that she will act with inveterate honesty and loyalty and keep the best interest of a party in mind. Rather, the only authority cited by Appellants, *Hoover Slovacek LLP v. Walton*, noted that, when considering an attorney-client fee agreement, the courts must consider that an attorney has a fiduciary duty toward the client to "conduct his or her business with inveterate honesty and loyalty, always keeping the client's best interest in mind." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560–61 (Tex. 2006) (quoting *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 868 (Tex. 2000) (Gonzales, J., concurring and dissenting)). There is nothing in *Walton* that indicates that because an attorney is held to a fiduciary duty toward his client, there is, per se, a *representation* to that client that he will act in accordance with that fiduciary duty.

21

Further, as we have previously discussed, since Lindauer was retained by Larry, as administrator of the Estate and trustee of the Trust, to defend the Estate and the Trust in the Federal Suit, Lindauer was the attorney for Larry, as administrator and trustee, not for Rodney as Trustee, or for Rodney and Cheri as beneficiaries of the Estate and the Trust. Appellants have cited no authority that, because an attorney is held to a fiduciary duty toward his client, he thereby makes a *representation* to non-clients that he will act in accordance with that fiduciary duty. Appellants also failed to point to any summary judgment evidence, and we have found none, that showed that Lindauer made any representations to any of the Appellants. Consequently, we find that Appellants failed to produce more than a scintilla of evidence that Lindauer made any material misrepresentation to any of the Appellants. Therefore, we find that the trial court did not err in granting summary judgment on Appellants' fraud claim.

### E.    Civil Conspiracy

Appellants also asserted a claim against Lindauer for civil conspiracy. In Texas,

An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

*Parker*, 514 S.W.3d at 222 (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). In Texas, civil conspiracy is "a theory of vicarious liability" that "requires some underlying wrong." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). "An actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means." *Parker*, 514 S.W.3d at 222 (citing *ERI Consulting*

22

*Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010)). "This inherently requires a meeting of the minds on the object or course of action." *Id.* (citing *Swinnea*, 318 S.W.3d at 881 (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983))). "Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement." *Id.* (citing *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968)).

In their live pleading, Appellants generally alleged that the "Defendants committed the unlawful, overt acts of breach of fiduciary duty, conversion, and fraud" and specifically alleged that each of the Defendants breached a fiduciary duty to one or more of the Appellants. Lindauer's no-evidence motion for summary judgment asserted, *inter alia*, that there was no evidence of any meeting of the minds to accomplish an unlawful purpose and that there was no evidence of any unlawful overt act in furtherance of the conspiracy. In their brief on appeal, Appellants point to the same evidence as they did to support their claims for breach of fiduciary duty by Lindauer, aiding and abetting Larry's breach of fiduciary duty, aiding and abetting conversion by Larry and Mitchell, and fraud by Lindauer.[16]

---

[16]In their reply brief, Appellants also point to evidence that showed that Lindauer shared office space with Mitchell, that they shared a contract employee that worked on the underlying cases, and that Mitchell occasionally talked with Lindauer about his cases in general but with no specifics. Appellants assert that this evidence, along with Lindauer's failure to investigate the allegations in the Federal Suit, admitting federal court jurisdiction, and entering into the agreed final judgment in the Federal Suit, was sufficient to show that she conspired with Larry and Mitchell to deceive the federal court. While we recognize that a conspiracy is generally proven by circumstantial evidence, "vital facts may not be proved by unreasonable inferences from other facts and circumstances." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968). A vital, or ultimate, fact cannot be reasonably inferred "from 'meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.'" *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013) (quoting *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997)); *see In re Estate of Ross*, No. 10-10-00189-CV, 2011 WL

23

In reviewing the summary judgment evidence, we have previously determined that there was no evidence that Lindauer breached a fiduciary duty or committed fraud. We also determined that there was no evidence that Lindauer had any knowledge of any breach of fiduciary duty by Larry or that Lindauer had any knowledge of any conversion by Larry or Mitchell. Appellants assert that this same evidence supports their allegations that Larry and Mitchell committed fraud and that Mitchell breached his fiduciary duties. However, the evidence cited by Appellants and the other summary judgment evidence does not raise more than a scintilla of evidence that Lindauer had any knowledge of the alleged fraud by Larry and Mitchell or of the alleged breach of fiduciary duty by Mitchell.

For these reasons, we find that the trial court did not err in granting summary judgment on Appellants' civil conspiracy claims.

## IV. Disposition

For the reasons stated, we affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     August 6, 2021
Date Decided:       October 5, 2021

---

6004336, at *6 (Tex. App.—Waco Nov. 30, 2011, no pet.) (mem. op.) (applying equal inference rule to no-evidence summary judgment). Even if Appellants' circumstantial evidence could give rise to an inference that Lindauer knew that Larry and Mitchell were attempting to deceive the federal court, an equally plausible inference is that Lindauer was simply following the directions of her client to not contest the lawsuit since he believed the fees were owed. Since both inferences are equally consistent with the facts, neither may be inferred. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 813–14 (Tex. 2005)).

24